WOLF and others vs. McGAVOCK.

*Change of residence—Attachment.*

Defendant owned and had resided for years on a large farm in this state, which he let in the spring of 1867, reserving certain rooms in the dwelling, where he continued to keep some of his household goods, and in the same spring went with his family to Iowa, where he took a contract for constructing two miles of railroad, and *voted* there at the general election in October, 1867. Thence he went to Omaha, bargained for a house in which he went to housekeeping, has never returned to this state to keep house, but testifies that he never intended to change his residence. *Held,* that he must be regarded as a *non-resident* of this state within the meaning of our attachment law; his voting in Iowa being of great weight in favor of that conclusion.

APPEAL from the Circuit Court for *Rock* County.

The plaintiffs appealed from an order dismissing an attachment which had been issued in the action. The grounds on which the attachment was claimed will appear from the opinion.

*Noggle & Castle,* for appellants.

*Todd & Converse,* for respondent:

Temporary absence is never a ground for an attachment. 8 Wis. 360; Drake on Attachments, 39. To constitute a residence, in the legal meaning of the term, there must be a settled, fixed abode, an intention to remain permanently, at least for a time, for business or other purposes. 18 Wend. 512; 19 id. 11. Here we find the defendant, a railroad contractor, going from one place where he had a contract to another; and he had been for fifteen years engaged in the same business. He testifies that his residence now is, and for fifteen years had been, in Rock county; that he reserved rooms in his house, and left his household furniture behind, and that he always intended to return. He voted in Iowa, under the belief that as a railroad man he had a right to vote there. To effect

a change of residence, it is not enough that one intends to change it, and believes that he has done what amounts in law to a change. The intent and fact must concur. 19 Wend. *supra;* 8 Abb. Pr. R. 78; 11 How. Pr. R. 507. All the authorities unite in making the intention govern. The defendant must have some fixed abode. Was he in any sense a " resident " upon the two sections of the railroad which he had undertaken to build? If so, then every man who takes a job upon a railroad in another state becomes a resident of that state, and his property is subject to attachment here. When the attachments were issued, the defendant was at Council Bluffs or Omaha. His first job upon the railroad was at an end, and he was seeking another. A man's actual residence is not always his legal residence. 4 Barb. 504–19.

COLE, J. The attachment in this case was taken out against the defendant on the ground that he was a non-resident of the state. The attachment was sued out March 31, 1868. Upon the traverse of the affidavit, the court held that the plaintiff had failed to sustain the issue that the defendant was a non-resident, and dismissed the attachment. The appeal is from that order. The question then is, Does the evidence show that the defendant was a non-resident of the state when the attachment was issued? We are of the opinion that it does.

A variety of circumstances are relied upon to show that the defendant was a resident of this state, within the spirit and meaning of the attachment law; that he had only left the state for a temporary purpose, but intending to return to it and live here with his family. It appears that the defendant owned several hundred acres of land in Rock county, including a large farm, with a dwelling-house upon it, in the town of Beloit. This farm was leased to a tenant, but there was a reservation of certain rooms in the dwelling-house, in which the defendant had kept some of his household goods and furniture. The

defendant likewise swore that his residence for the last ten years had been in the town of Beloit, and that when he left Beloit it was with the intention of returning to his farm and residence. These are the most material circumstances relied upon to show that the defendant was a resident of this state when the attachment was issued.

On the other hand, it appears that the defendant was, early in the year 1867, engaged as sub-contractor in constructing two miles of the Burlington & Missouri Railroad. He was living with his family at that time in Jones township, Union county, Iowa, engaged, with a large number of men and teams, in performing his contract. *In October,* 1867, *he voted in that township, at the general election in that state.* From Union county the defendant removed with his family to Omaha, where he made a contract for a house and lot, and went to keeping house. He has never, in fact, returned to this state, and gone to keeping house.

Now, in determining whether the defendant was a resident of this state or of Iowa, during the most of the year 1867, we are disposed to give decisive weight to the fact that he voted in that state in October, 1867. Frequently a person's residence is of a doubtful nature, and his intention as to that residence may be more equivocal and obscure. "Both are sometimes to be gathered from slight circumstances of mere presumption, and from equivocal and conflicting acts. An intention of permanent residence may often be engrafted upon an inhabitancy originally taken for a special or fugitive purpose." Story, Conf. of Laws, § 45. But we cannot conceive of any circumstance of more controlling weight, as bearing upon the question as to what state a man has taken up a permanent residence in, than the act of voting. This act is so important and deliberate that it should have decisive preponderance upon the question whether a debtor believes that he is a resident of a particular state. For the defendant must be presumed to know that he

had no right to vote in Iowa unless he was a resident of that state. He exercised the elective franchise there because he considered himself at the time as a resident of that state, and as having the right to vote where he did. The idea that he "understood he had got the privilege of voting because he was a railroad man, who was going around all the time," is not very complimentary to his intelligence and understanding. He had been residing for some months with his family in Jones township previous to October, 1867, doing business there; and these facts, coupled with the act of voting at that place, indicate unmistakably an intention on his part of abandoning his residence in this state and of becoming a resident of the state of Iowa. We therefore think the evidence shows that the defendant was a non-resident of this state when the attachment was issued, and that the attachment was improperly dismissed.

*By the Court.* — The order dismissing the attachment is reversed, and the cause remanded for further proceedings.