# *Ex parte* Tower Manufacturing Co. *et al.*

## *Application for Mandamus.*

1. *Motion for mandamus in supreme court; entertained though not accompanied by petition stating the facts upon which relief is asked.*—When an application is made to the supreme court for a writ of *mandamus* to an inferior court of record, because of matters necessarily appearing of record in said court, a petition stating the facts upon which the relief is asked, verified by the oath of the appellant, while more formal, is not necessary, since upon an authenticated transcript of the record of the proceedings in the inferior court, the supreme court will entertain a motion for *mandamus* entered on the motion docket, of which notice is given to the parties in adverse interest.

2. *Right of married woman to an appeal without giving security for costs; not applicable to personal judgment and decree.*—When there is a judgment or decree against a married woman, not binding on on her personally, but directly operating upon and subjecting to sale, by the force of its own terms, her statutory or other separate estate, she is entitled, under the provisions of section 3629 of the Code, to an appeal to the supreme court to revise such judgment or decree, without giving security for costs of appeal, upon making affidavit that she is unable to give such security ; but this statute does not apply to a personal judgment or decree against her for the recovery of money.

3. *No appeal from order of court directing clerk to make transcript &c.; mandamus proper remedy.*—Where, after the rendition of a personal decree against a married woman for the recovery of money, the court, on her application as prescribed by the statute (Code, § 3629), made an order requiring the clerk to make a transcript and certify the appeal, and to suspend the issue of execution on said decree, without her giving security for costs or bond to supersede the execution,

an appeal will not lie from such order; and there being no other appropriate or adequate remedy for the revision of such ruling, *mandamus* will be awarded.

The facts·of the case are sufficiently stated in the opinion.

J. J. WILLETT and D. C. BLACKWELL, for relator, cited *Coleman v. Smith*, 52 Ala. 259; *Cahalan v. Monroe*, 65 Ala. 254; *Guy v. Lee*, 80 Ala. 346.

KNOX, BOWIE & PELHAM, *contra*.—A remedial statute must be liberally construed, so as to suppress the mischief and advance the remedy which it is intended to meet.—*Blakeney v. Blakency*, 6 Por. 109; *Sprowl v. Lawrence*, 33 Ala. 674.

Section 3629 is a remedial statute, passed for the benefit and protection of married women, and should, therefore, be liberally construed. In the case at bar, the decree of the court does not itself order the sale of any part of the separate estate of Mrs. Thompson. ·By the terms of the decree execution is ordered to issue, however, the effect of which is to direct the sheriff, under a mandatory writ of this court to seize and sell the goods, chattels, lands and tenements belonging to Mrs. Thompson for the satisfaction of said decree. The statute, by its terms, is not limited to judgments or decrees which order the sale of the separate estate of a married woman, but extends as well to all decrees under and by which the separate property of the married woman is subjected to sale. The separate estate of Mrs. Thompson is subjected to sale by the decree in this case ordering execution to issue against her for the satisfaction of the decree. *Ware v. McDonald*, 62 Ala. 81.

BRICKELL, C. J.—On the 10th day of March, 1894, the city court of Anniston rendered a personal decree against C. A. Thompson, a married woman, in favor of the movants, for the sum of ten thousand, nine hundred and fifty-nine 36-100 dollars, ordering the issue of execution thereon. On the 19th day of March thereafter, Mrs. Thompson, having made and filed with the clerk of the court the affidavit prescribed by the statute, (Code §3629), claimed an appeal from the decree, without giv-

ing security for the costs of appeal, or bond with sureties to supersede its execution. The clerk refused to make a transcript of the record and certify the appeal. Thereupon she applied to the city court for an order requiring the clerk to make a transcript and certify the appeal, and for a suspension of the execution of the decree, until the appeal was heard and determined. The court granted the application and made the order, and the movants, having given notice to the judge of the city court and to Mrs. Thompson, now move for a rule *nisi* directed to the judge, to show cause why a peremptory *mandamus* should not issue commanding him to vacate the order. The parties have appeared and submitted arguments and briefs in support and in opposition to the motion.

1. It is suggested by the counsel opposing the motion, that it ought to be overruled, because it is not accompanied by a petition or other like pleading, stating the facts on which the right to relief is based, verified by the oath of the movants. If the right to relief was dependent on matter not appearing of record, in whatever form the application was made, a verification of it by the oath of the applicant, or affidavit in support of it, making a *prima facie* case, would be essential. When the application is made to this court for the grant of the writ directed to an inferior court of record, because of matters necessarily of record, an authenticated transcript of the record, renders unnecessary the verification by the oath of the applicant, or other affidavits to support it. The authenticated record is the sole evidence upon which the court acts. A petition stating the facts upon which the right to relief is claimed, would be more formal, and in correspondence with the mode prescribed by the statute, when a like application is made to the courts of original jurisdiction.—Code, § 3158. The practice of applying by motion, entered here on the motion docket, of which notice is given to the parties in adverse interest, has prevailed too long now to be departed from, however informal it may seem.—*Ex parte Garland*, (Opinion of Walker, C. J.), 42 Ala. 559.

2. The writ of *mandamus*, it may be, has been employed by this court more liberally as a remedy for the correction of the errors of inferior tribunals, than would seem consistent with the principles of the common law.

If this is true, it is in some degree attributable to the existence of peculiar statutory proceedings, in which errors may intervene, incapable of correction by appeal or other revisory remedy. In other cases, to prevent a failure of justice, or irreparable injury, when there was a clear legal right, and an absence of any other adequate remedy, there has been resort to *mandamus*. The recent cases of *Ex parte Barnes*, 84 Ala. 540, and *Reynolds v. Crook*, 95 Ala. 570, are illustrative. In the first case, in the course of a suit commenced by attachment, the goods on which a levy had been made were sold and the proceeds of sale were in the hands of the sheriff. A claim of exemption was interposed by the defendant, which was invalid, the attachment having been sued out to enforce the lien for the rent of a storehouse. Yet the circuit court sustained it, and made an order directing the sheriff to pay the proceeds of sale to the defendant. The order was erroneous, and was destructive of the lien for the payment of the rent. It was not a final judgment from which an appeal would lie, and the execution of which the plaintiff could suspend by the giving of a bond with sureties. To prevent a failure of justice and irreparable injury, a *mandamus* was awarded, compelling a vacation of the order, and the restoration of the parties to the condition in which they were, when the error was committed. In the second case, in the course of a suit in equity for the final settlement of an administration, creditors had been notified to come in and make proof of their claims. A creditor appeared, filed and proved her claim, which was allowed. She having died, the proper personal representative appeared, and moved for a revival of the decree in his name, which was refused. The court interfered by *mandamus*, compelling the revivor, for otherwise there would have been a failure of justice. The claim having been allowed, the right of the creditor established, there was an obvious necessity for his continuous representation in the progress of the suit, in which orders or decrees might be made, of injury to him, to which there was not opportunity for objection or exception. These cases are illustrative of the principle upon which this court has proceeded. If an order, or judgment, or decree, is made or rendered, which is not the subject of revision by appeal, or other revisory remedy, and yet is errone-

ous, working injury to the party complaining, and there be no other legal remedy, adequate to the correction of the error and the prevention of the injury, *mandamus* will be awarded.—2 Brick. Dig. 240, §§ 4–5; 3 Brick Dig. 626, §§ 15–39.

The statute under which Mrs. Thompson asserted the right to an appeal without giving surety for costs, and a suspension of the issue of execution on the decree, so far as is now material, reads: "From any judgment of the circuit or city court, or from any order or decree of the court of probate, or from any decree of the court of chancery subjecting to sale the separate estate of a married woman, or any part thereof, be the same her statutory separate estate, or a separate estate otherwise created, she is entitled to an appeal to the supreme court to revise such judgment, order, or decree, without giving security for costs of appeal, on making affidavit that she is unable to give such security."—Code, § 3629. When the statute was originally enacted (March 9th, 1871; Pamp. Acts, 1870–71, p. 45) there were but few instances in which a personal judgment or decree could be rendered against a married woman. The one was for her debts contracted before her marriage, the husband being relieved of his common law liability for their payment, and the statute expressly declaring that therefor she alone was suable and her separate estate liable as if she were unmarried. Code of 1876, § 2704.—For her torts committed before or subsequent to marriage, her liability to suit remained as at common law; and a personal judgment could be rendered against her, if the liability was ascertained and fixed. Her statutory separate estate was liable "for articles of comfort and support of the household," and the liability was enforced by an action at law against her and her husband. But as to the wife, a personal judgment could not be rendered. So far as she was concerned, the only judgment which could be rendered, was a judgment subjecting her statutory estate to levy and sale. The judgment had in it, all the properties and elements of a judgment *in rem*, rather than of a judgment *in personam*.—*Ravisies v. Stoddart & Co.*, 32 Ala. 599. The only orders or decrees a court of probate could render, unless they were founded on a liability incurred by her in a representative capacity, was for the sale of her statutory or other separate estate, and like

all orders or decrees of sale rendered by that court, were *in rem* not *in personam*. In a court of equity, the equitable separate estate of the wife was charged with the payment of her debts, as she would have been charged at law if *sui juris*. But it was the estate only which was charged; a personal liability was not fixed upon her, and a personal decree was not rendered against her. Reading the statute in connection with other statutes, and with the principles of the common law, relating to the liability of a married woman to suit, we ascertain its scope and extent. When there is a judgment or decree, not binding a married woman personally, but directly operating upon and subjecting to sale, by the force of its own terms, her statutory or other separate estate, as a matter of right, she is entitled to an appeal to this court, without security for costs; and of itself, the appeal operates "a suspension and stay of all proceedings," until it is here heard and determined. As was said in *Cahalan v. Monroe*, 65 Ala. 254: "It is only when the decree directly orders or directly condemns to sale her estate, that the statute confers the privilege of an appeal without surety for costs. No other decree *subjects*, *exposes*, makes *liable* to sale her estate. The statute must not, by construction, be strained to meet cases not within the fair meaning of its terms, which are plain and unambiguous, because it may be supposed such cases are equally meritorious, and entitled to as great consideration from the legislature, as those which are embraced by its words." The decree of the city court is an ordinary decree for the recovery of money, affecting and binding Mrs. Thompson personally; so long as unreversed or unvacated, establishing conclusively, that the complainants therein, are entitled to have and recover of her, the sum of money therein expressed. This is the entire force and effect, which can be accorded to it. Of itself, it does not operate upon, or charge any of her property, real or personal, whatever may be her title to it. It is only an execution issuing upon it, which may become a lien upon her property, the subject of levy and sale. From the decree, she was not entitled to an appeal without giving security for costs, nor was she entitled to a stay or suspension of execution, without bond with sufficient sureties, payable and with condition as prescribed by the statute.

3. The order of the city court, not only requires the

[Gary *et al.* v. Woodham *et al.*]

making of the transcript and certificate of appeal by the clerk, but it stays the issue of execution, until the appeal is heard and determined. From the order an appeal will not lie; and if it would, it could scarcely be said to be an adequate remedy. During its pendency, there could be alienations of the estate of the defendant, the subject of levy and sale, to the irreparable injury of the complainants. As now, so long as the order of suspension remains of force, preventing the complainants from the acquisition of liens, by the issue and delivery of execution to the sheriff, alienation of all the property of the defendant may be made, rendering the decree fruitless and unavailing. The case is a clear one for a *mandamus*; there is no other adequate remedy.

It is ordered and adjudged that a rule *nisi* issue to the judge of the city court of Anniston, requiring him to appear on Monday, June 18th, 1894, before this court, and show cause why a peremptory *mandamus* shall not issue, commanding him to vacate the said order.