22 So.2d 510

**Ex parte WEISSINGER.**

**2 Div. 209.**

Supreme Court of Alabama.

March 8, 1945.

Rehearing Denied April 26, 1945.

Application for Further Rehearing Dismissed June 30, 1945.

Horace C. Wilkinson, of Birmingham, and Reuben H. Wright, of Tuscaloosa, for petitioner.

Jones, Dominick & McEachin and L. C. Bell, all of Tuscaloosa, for respondent.

SIMPSON, Justice.

The primary inquiry relates to venue and whether the divorce action against petitioner, Dr. William Wood Weissinger, should have · been brought in Greene County, where he and his wife were living when the separation occurred, or in Dallas County, the original domicile of petitioner, from whence he had shortly removed, previous to his marriage in August, 1943.

The ruling on the question was invoked in the trial court by a hearing on plea in abatement No. 2, and here decision turns upon a consideration of the evidence in support of that plea. A secondary inquiry is whether such a ruling may be reviewed by mandamus and before a trial of the cause on its merits.

The propositions will be treated in order.

The pertinent provision of the law governing the venue of the present cause is: "Bills for divorce may be filed ·in the circuit court of the county in which the defendant resides, or in the circuit court of the county in which the parties resided when the separation occurred," etc. Code 1940, Tit. 34, § 28.

The plea in abatement is premised upon the theory that Dallas County was the legal residence of Dr. Weissinger, both when the suit was filed and when the separation occurred, whereas the ruling of the trial court affirmed the opposing contention that the suit was properly venued under the latter aspect of the statute authorizing suit in the county "in which the parties resided when the separation occurred."

With the purpose of confining discussion to the real question arising from a construction of the quoted provision, in connection with the evidence, we will state at the outset certain legal propositions already concluded by previous decisions of this

court and which must be held in mind in analyzing the ultimate issue to be decided.

The word "resides" as used in the foregoing quoted section means *legal residence* and is equivalent to *domicile*. The terms, as employed, are synonymous and denote the place where the person is deemed in law to live, which may not always be the place of one's actual dwelling, and are to be contra-distinguished from temporary abode. Caheen v. Caheen, 233 Ala. 494, 172 So. 618; Allgood v. Williams, 92 Ala. 551, 8 So. 722.

An Alabama citizen may have a legal residence or domicile in one county and be actually living in another, but if so, a divorce action against him may not be brought in the latter, but must be laid in the former county—his legal residence, his domicile. Under the said statute, the place of residence—domicile—of the defendant and not the place of separation is the proper venue for a divorce action, unless, of course, the legal residence of the parties (both parties) was in such latter county at separation. To such effect is the holding in Pucket v. Pucket, 174 Ala. 315, 318, 56 So. 585, 586, where it was observed that "the statutes with regard to divorce proceedings, where the parties are residents, direct that the bill must be filed in the chancery district in which the defendant resides, or in the district in which the parties (*both parties*) resided when the separation occurred." (Emphasis supplied.)

The law recognizes that there may be (1) domicile of origin, that of the person's parents or head of his family or on whom he is legally dependent at birth; (2) domicile of choice, the place which a person has voluntarily chosen for himself to displace his previous one; or (3) domicile by operation of law (not here pertinent). 28 C.J.S., Domicile, p. 10, § 5.

The law is also established that a domicile, once acquired, is presumed to exist until a new one has been gained "facto et animo." Bragg v. State, 69 Ala. 204; Caheen case, supra. And in order to displace the former, original domicile by the acquisition of one of choice, actual residence and intent to remain at the new one must concur. "Domicile of choice is entirely a question of residence and intention, or, as it is frequently put, of factum and animus." 28 C.J.S., Domicile, p. 11, § 9.

A change of domicile cannot be inferred from an absence, temporary in char-

acter, and attended with the requisite intention to return. To the fact of residence in the new locality there must be the added element of the animus manendi before it can be said that the former domicile has been abandoned. The intention to return is usually of controlling importance in the determination of the whole question. Lehman, Durr & Co. v. Bryan, 67 Ala. 558; Ex parte Altman, 237 Ala. 642, 188 So. 685. Or, borrowing the words of the digester, negatively expressed, there must be an absence of any present intention of not residing in the new domicile permanently or for an indefinite time. 17 Am.Jur. p. 605, § 24.

To summarize: A person's domicile is that place in which his habitation is fixed, without any present intention of removing, and it embraces (1) the fact of residence and (2) the intention to remain. As a general proposition a person can have but one domicile, and when once acquired is presumed to continue until a new one is gained facto et animo, and what state of facts constitutes a change of domicile is a mixed question of law and fact. Lucky v. Roberts, 211 Ala. 578, 580, 100 So. 878, 879, and cases cited.

One who asserts a change of domicile has the burden of establishing it. Caldwell v. Pollak, 91 Ala. 353, 357, 8 So. 546. And "where facts are conflicting, the presumption is strongly in favor of an original, or former, domicile, as against an acquired one," etc. 28 C.J.S., Domicile, p. 36, § 16.

Coming to apply these settled principles to the case before us, we have concluded that the weight of the evidence strongly supports the plea in abatement. Petitioner was born, reared, and registered as a voter in Dallas County. His poll tax was paid there and, after removing to Greene County, he cast an absentee ballot there, voting in the Democratic primary of 1944, certifying his residence to be in Dallas county, all before any question as to the importance of his domicile arose.

In passing, it may be well to here observe that payment of poll tax and voting is indicative of intention with respect to the question here involved and is regarded as importantly bearing upon the place of domicile. 28 C.J.S., Domicile, p. 41, § 17, subsec. d(3). "The domicile of a man will usually be in the place where he votes." 2nd Schouler, Divorce, 6th Ed., § 1497, p. 1747. Exercising the right of elective franchise,

dependent upon citizenship and domicile, is regarded as having weight in settling the question of a person's legal residence. Such act is a deliberate public assertion of the fact of residence and is said to have decided preponderance in a doubtful case upon the place the elector claims as, or believes to be, his residence. Cooper's Adm'r v. Commonwealth, 121 Va. 338, 93 S.E. 680; Wolf v. McGavock, 23 Wis. 516; First Nat. Bank v. Tate, 116 W.Va. 138, 178 S.E. 807.

■ Petitioner, now about twenty-four years old, upon being graduated from the Alabama Polytechnic Institute at Auburn in February, 1943, came to Greene County under circumstances as follows: The second World War was in progress. He had received a degree in veterinary medicine and a Reserve commission as second lieutenant in the Medical Administrative Corps of the United States Army and placed on inactive duty. This, the evidence indicates, made him subject to Selective Service and the Procurement and Assignment Service of the United States Government then assumed jurisdiction over him and certified that he was more essential, in civilian employment, as a veterinarian than in the armed services as a draftee. He was then relieved from draft by the Selective Service, provided he accepted assignment as a veterinarian in certain localities to be designated by the Procurement and Assignment Service. He was not permitted free choice, without being subject to draft, in the selection of a location and could not, under these circumstances, locate in his home county of Dallas, but was allowed to locate in Greene County because of the need of veterinary services in that locality. He made the selection and was assigned there by the Procurement and Assignment Service.

In our opinion his acts, declarations and conduct, both before and after his location in Greene County, evinced a clear purpose of maintaining only a temporary residence there for the duration of the war, his domicile—"home," as he and his wife called it—still being Dallas County. If we have construed the evidence correctly, as we think we have, it seems that his wife also considered Dallas County as his home county and legal residence.

Importantly controlling on this issue is, as above suggested, that his location in Greene County was not entirely of his free choice, but was controlled by government direction. True, he could have disregard-

ed the determination of his government as to the essentiality of his service as a veterinarian, located elsewhere and subjected himself to draft, but he elected not to do so.

Many other citizens have elected to do likewise, and have remained in essential civilian services to sustain the war effort, rather than bear arms for the country, and it is not our province to analyze the motives or patriotic qualities of such conduct. It suffices for present purposes to declare, that removal from domicile of origin under the circumstances revealed by the record before us does not denote that voluntary selection of another as is required by law as a forfeiture of the former.

The Alabama statute providing (inter alia) that no person shall lose or acquire a residence "by being absent from his or her place of residence in the civil or military service of the state, or the United States" (Title 17, § 17, Code of 1940) is but a legislative declaration of the same principle and, whether here controlling or not, has weight in illustrating the unwisdom of a legal adjudication of a forfeiture of one's domicile under conditions as here disclosed.

■ The other rule of presumption, that the domicile of a married man is presumed to be at the place where he lives with his family (19 C.J. p. 433, § 69; 28 C. J.S., Domicile, § 16) is, we think, far outweighed by the opposing presumptions and the unequivocal evidence attending them. Therefore, we are constrained to hold that venue of the instant action should have been Dallas County.

The question of whether mandamus may be employed as a method of review is next to be considered.

■■ Originally, the function of the writ was to compel judicial action but not to correct errors or direct what particular judgment or decree should be rendered. Wilson v. Duncan, 114 Ala. 659, 672, 21 So. 1017. But this court has permitted a liberal enlargement of the use of the writ so that, "if an order, or judgment, or decree, is made or rendered, which is not the subject of revision by appeal, or other revisory remedy and yet is erroneous, working injury to the party complaining, and there be no other legal remedy, adequate to the correction of the error and the prevention of the injury, mandamus will be awarded." Ex parte Woodruff, 123 Ala. 99, 100, 26 So. 509; Ex parte Tower Mfg. Co., 103 Ala. 415, 418, 15 So. 836.

The test, as to whether mandamus will be issued, now seems to depend on whether the remedy by appeal is adequate to prevent undue injury rather than the availability merely of remedy by appeal. Ex parte Watters, 180 Ala. 523, 61 So. 904.

Consonant with this principle, the writ has been applied to correct the erroneous refusal of the lower court to allow an amendment to a complaint (Ex parte Sullivan, 106 Ala. 80, 17 So. 387); to require the giving of a sufficient statutory bond in an election contest (Wilson v. Duncan, supra); to review nisi prius action on motion to discharge an injunction (Ex parte Fechheimer, 103 Ala. 154, 15 So. 647); to review an order relieving a married woman from giving security for cost or supersedeas bond on appeal from a personal money judgment. Tower Mfg. Co. case, supra. Many other analogous cases could be cited.

In a very recent case, this court indicated that since, under the amended statute, a ruling on the sufficiency of a plea in equity is not appealable (now Code 1940, Title 7, § 755), a review by mandamus may be permitted if review on appeal from final decree does not afford adequate relief. Rowe v. Bonneau-Jeter Hardware Co., 245 Ala. 326, 16 So.2d 689 (16–18).

The proceeding has also been allowed, and opinion rendered, in a case similar to the one at bar, though there, the facts were under review by their inclusion in the plea itself. Ex parte Hale, 246 Ala. 40, 18 So. 2d 713.

Concededly mandamus is not a writ of right. Its issuance lies in the sound judicial discretion of the court. It was invented to supply defects in justice and prevent irreparable injury where there is no other adequate legal remedy available. 34 Am.Jur. p. 835, §§ 41, 42. Also, "it is an accepted doctrine that courts in the exercise of their discretionary power to issue extraordinary writs will look to the public interests which may be concerned. This is true where injunctive relief is sought, and is, with equal reason, a matter which will be taken into consideration in determining whether a writ of mandamus shall issue in a particular case." 34 Am.Jur. p. 830, § 35.

While the last-quoted doctrine has been stated with reference to the enforcement of official action by municipal, state and government employees, we cannot see why, by analogy, it could not be regarded as applicable here. A proceeding of this character is a matter of vital, public interest. We have said that "suits of this nature are regarded as of a tripartite character, wherein the public occupies in effect the position of a third party, and the court is bound to act for the public in such cases, though of course the rights of the parties themselves must be fully respected. (Citing authorities.) We apprehend, therefore, that in cases of this character questions of mere legal niceties in regard to pleading should not interfere with the meritorious consideration of the cause." Spafford v. Spafford, 199 Ala. 300, 308, 74 So. 354, 358, L.R.A.1917D, 773.

So, shall we now, in such a case of vital public interest, allow the trial to proceed at the irreparable expense of the parties, utilizing the time of the court and its officers to publicize the tragedy which has overcome this unfortunate young couple and their child, all to the futile avail of determining upon a final appeal that the suit must then be abated and the proceedings repeated elsewhere? Or shall we exercise the wise discretion vested in us and grant the writ, thereby achieving the reasonable and saving both parties, especially the young lady who asserts a meritorious case, from the expensive and harrowing experience of a purposeless trial? The answer is obvious.

Writ granted.

All Justices concur, except FOSTER, J., who dissents.

FOSTER, Justice (dissenting).

"If the husband, at the time of the marriage, has merely a temporary abode in the county where they live, being a resident and qualified voter of another county, and husband and wife establish no family residence facto et animo prior to the date of the election, the wife would still be a legal voter in her home town." This was spoken in Wilkerson v. Lee, 236 Ala. 104, 181 So. 296, 298. Her home town would then be fixed as her residence for all purposes until another is acquired.

In this case the defendant must plead and prove facts which constitute good matter in abatement. He does not allege that the residence of complainant was not in Greene County at the time of the separation. Then we may assume that it was in that county when they were married and lived during the period of their cohabitation. Pucket v. Pucket, 174 Ala. 315, 56

So. 585, was not such a case. There was no question there of a separate residence of the two spouses. I think a fair interpretation of section 28, Title 34, Code, would justify a holding that the venue could under those circumstances be laid in Greene County, her domicile, the county of their marriage, and the county where they actually spent their married life and lived at the time of their separation. I do not think it would do violence to the statute nor to Puckett v. Puckett, supra, to so hold. "It is the place where the marital contract is being performed." 27 Corpus Juris Secundum, Divorce, p. 634, § 71, note 42. Its permanency is attested by the fact that complainant had at the time of separation her actual domicile in that county.

Neither can I agree that the finding of facts and conclusions from the evidence can be reviewed in a mandamus proceeding to justify the granting of it. I think we have gone the limit in considering the legal sufficiency of such a plea in denying the writ, as we have done. Ex parte Hale, Ala.Sup., 18 So.2d 713;[1] Rowe v. Bonneau-Jeter Hardware Co. 245 Ala. 326, 16 So.2d 689; Koonce v. Arnold, 244 Ala. 513, 14 So.2d 512.

The remedy is "not appropriate to review the action of a court in any matter involving the examination of evidence and decisions of questions of law and fact" when there is adequate review on appeal from the final judgment. 35 Amer.Jur. 30, note 14; Woodward Iron Co. v. Dean, 217 Ala. 530, 117 So. 52, 60 A.L.R. 536.

I am unable to distinguish this review from such a trial at law on a plea in abatement setting up that the defendant was sued out of the county of his residence. Suppose it were tried there by jury,—the same argument as to the advisability of such a review would apply there as here. The evidence must be certified and filed and heard as to its sufficiency as though that were for the time being the whole case, and would include all exceptions on the trial. All on mandamus. The law provides for appeals from certain interlocutory decrees in equity. This is not one, and never has been. At one time an appeal would lie as to the legal sufficiency of a plea. The legislature repealed that. We are now not only re-enacting that, but by our ipse dixit extending it to include a review of conclusions of fact on the evidence. I suppose this should also include all collateral incidents of such a trial as would obtain on an appeal from such a decree. I think that is legislating by this court and not performing a judicial function. The right to legislate does not exist in this court.

We have only granted the writ in respect to temporary matters or such as are procedural, as to which there would be no adequate review on an appeal from a final decree or judgment. It seems never to have been supposed in any authority that an erroneous conclusion from the evidence on a plea in abatement could not be adequately reviewed on appeal from the final decree, or that it may be reviewed by mandamus prior to the final decree.

The conclusion reached cannot be based on the fact that in a divorce case there should be a different rule. We are not considering what ought to be the law, but applying what is the law. If a different rule should apply to divorce cases, the Legislature should enact the law, but this court should not do so by a judicial opinion. We can no more prescribe in that manner the procedure for appellate review in divorce cases than in any others. If we should wish to do so, and have the power, it ought to be by rule. Our opinions and decrees are supposed to apply the law, but not to make law.