104 So.2d 897

**Ex parte Velva M. AUFILL.**

4 Div. 934.

Supreme Court of Alabama.

Aug. 28, 1958.

W. G. Hardwick, Dothan, for appellant.

W. R. Martin, Ozark, for appellee.

STAKELY, Justice.

John Stuart Aufill, a Captain serving in the army at Fort Rucker, Alabama, filed his suit in the Circuit Court of Dale County, Alabama, in Equity, seeking a divorce and other relief against Velva M. Aufill (the petitioner here).

Velva. M. Aufill entered a special appearance in the Alabama Court and filed a special plea alleging that prior to the institution of the suit in Dale County, Alabama, which was the 26th day of January, 1957, she had filed on September 17, 1956, a suit for divorce against John Stuart Aufill in the State of California in and for the County of San Mateo and that Aufill, after service of summons and complaint on him in Alabama, filed in the California Court a plea in abatement, alleging that she and Aufill were not residents of California but residents of Alabama.

Petitioner further alleged in her special plea that the California Court had jurisdiction of the parties and the cause and further that Aufill had appeared in the California Court and had the jurisdictional question resolved against him on the introduction of proof by both sides and thus had had his day in court and ought not now to be heard again and further that Alabama is bound to recognize the valid order of her sister state, the State of California.

Aufill by reply to petitioner's special plea alleged fraud by petitioner on the California Court. He alleged that on September 15, 1956, Velva M. Aufill swore falsely to the jurisdictional averments in the bill in the California Court to the effect,

"That for one year last past, and next preceding the commencement of this action, plaintiff has been and now is a bona-fide resident of the State of California, and for more than three months last past and next preceding the commencement of this action, plaintiff has been and now is a bona-fide resident of the County of San Mateo."

The Circuit Court of Dale County heard evidence on the special plea of Velva M. Aufill filed in the Circuit Court of Dale County and the reply of Captain Aufill thereto. This evidence may be summarized

as follows, although, as will appear, all of this evidence need not now be considered.

The petitioner offered in evidence authenticated records of the State of California in and for the County of San Mateo in the case of Velva M. Aufill, Plaintiff, v. John Stuart Aufill, Defendant, Case No. 73228, as follows:

1. Summons and Complaint filed September 17, 1956, seeking divorce and other relief.

2. Certificate of Service on Defendant dated September 24, 1956, by the Sheriff of Dale County, Alabama.

3. Plea in Abatement to the jurisdiction filed October 29, 1956, with attached affidavit of Miley C. Orr of Dale County, Alabama.

4. Affidavit of Aufill filed December 11, 1956, claiming he was a resident of Alabama.

5. Minutes of Court proceedings reflecting affidavits and evidence offered in support of plea in opposition to the plea in abatement and Court's ruling thereon dated December 17, 1956, denying plea in abatement. These minutes show there was introduced as evidence the testimony of Petitioner and Exhibits:

No. 1 (Certificate of Registration)

No. 2 (Last Will and Testament)

No. 3 (Letter from Department of Cosmetology)

No. 4 (Letter from Department of Cosmetology)

No. 5 (Letter from Department of Motor Vehicle).

6. Notice of Ruling on Plea in Abatement filed December 21, 1956, with certificate that notice had been regularly mailed to William R. Martin on December 18, 1956.

7. Plea claiming rights under Soldiers and Sailors Relief Act of 1940 [50 U.S.C.A. Appendix, § 501 et seq.] filed on January 7, 1957.

8. Interlocutory Decree of Divorce filed April 3, 1957, granting relief to Petitioner.

Captain Aufill testified substantially as follows: He was a native of Arkansas and went into the armed forces in World War II. On June 17, 1942, he married Velva M. Aufill in the State of Arkansas. He made a home for his wife and himself in Arkansas and in Missouri, then he was ordered to overseas duty and he carried his wife to the State of California and rented a home for his wife and family to reside therein while he was overseas and out of the United States. He was discharged from World War II service in the month of August 1946 and joined his wife and family in California. He lived and worked at a number of jobs in California until December 14, 1951, when he was called back to active military service and left California for Fort Lewis, Washington.

During the time he lived in California, between August 1946 and December 14, 1951, on September 14, 1950, he registered to vote in San Mateo County, California. However on December 31, 1952, his voting registration was cancelled by the County Clerk of the Board of Supervisors for non-voting.

He bought a house in California so his family could be assured of a home within which to live during the time he was in the army and during his service overseas in Korea. He went overseas to Korea in the early part of 1952. He was rotated or returned to the United States on May 12, 1953, with orders to report to Fort Sill, Oklahoma. He sold the house in California in August of 1953, and on August 29, 1953, he left California for Fort Sill, Oklahoma. He arranged for his wife and family to join him there shortly thereafter which they did. After he arrived at Fort Sill his wife and family joined him at Lawton, Oklahoma (Fort Sill) and they lived as a family unit there for nearly two years.

He was then transferred to Fort Rucker, Alabama. With his wife and children he arrived in Alabama on or about October 20, 1954. He rented a house in Dothan, Alabama, where he and his family resided together as a family unit. In addition to renting a house in Dothan he bought automobile tags for his cars and bought a driver's license for his wife. He opened up a joint bank account for himself and his wife and he opened up various charge accounts for himself and his wife. He sent his children to the public schools of Alabama and on December 17, 1956, he became a registered voter of Dale County, Alabama.

From October 20, 1954, to February 15, 1956, he and his wife and children lived together as a family unit, until following domestic troubles between himself and his wife, Mrs. Aufill put him out of the family home, locked him out of the home and told him she did not wish any longer to live with him as his wife.

On or about August 17, 1956, Velva M. Aufill without his knowledge or consent, put all their furniture and family goods in storage in Dothan, Alabama. She gave up the house and took all the money in the common bank account. She took one family automobile and left with the children for California. She was in California before he ever knew she had even left Alabama at all. While she was living with him as his wife, she formed an association with another officer stationed at Fort Rucker. Her association with the other officer brought on the family trouble between himself and his wife, which culminated in her ordering him out of the family home in Dothan.

The Circuit Court of Dale County on a hearing on the special plea of petitioner and the reply of Aufill, denied petitioner's special plea.

This is an original petition in this court by Velva M. Aufill for a writ of mandamus to the Honorable George Wallace as Judge of the aforesaid Court to require him to vacate and set aside the decree entered as aforesaid. The case is submitted here on the petition for mandamus and the demurrer and answer of Judge George Wallace as respondent.

 I. It is insisted that the present matter should not be reviewed by mandamus because the questions here involved can be ultimately reviewed on appeal. This court has held that mandamus will not ordinarily be granted if the matter complained of, including a ruling on a plea in abatement, can be ultimately presented to the appellate court through the medium of an appeal from a final decree. Ex parte Brooks, 264 Ala, 674, 89 So.2d 100; Ex parte Little, 266 Ala. 161, 95 So.2d 269. And it has further been held that expense and inconvenience are not sufficient to make an exception to the aforesaid general rule. Ex parte Brooks, supra.

However, exceptions to the general rule to which we have referred, are mentioned in Brittain v. Jenkins, 263 Ala. 683, 83 So.2d 432. One of the exceptions is that in the sound discretion of the court the writ may be employed to review the ruling in divorce cases on a plea in abatement raising the question of venue, the theory being that there is a public interest involved in such cases. Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510; Ex parte Davis, 249 Ala. 221, 30 So.2d 648.

In the Weissinger case, supra [247 Ala. 113, 22 So.2d 514], for example, this court concluded that "the weight of the evidence strongly supports the plea in abatement," and granted the writ.

Accordingly we shall proceed to review the ruling of the Dale County Circuit Court by way of mandamus.

 II. It is settled that where the defendant appeared in the foreign court and by plea put in issue the plaintiff's allegation as to domicile, introduced evidence to show it false, and attempted to have the court sustain his plea, the finding of the court that the plaintiff was a bona fide resident and that it had jurisdiction of the cause, is conclusive upon the defendant as

res adjudicata of the question of jurisdiction. Such finding under the rule of full faith and credit as set forth in the Constitution of the United States, cannot be impeached in the courts of any other state. Rice v. Rice, 336 U.S. 674, 69 S.Ct. 751, 752, 93 L.Ed. 957; Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 209, 87 L.Ed. 279, 143 A.L.R. 1273; Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518. In the last cited case it was held that a determination of a state court in which the defendant in a divorce suit appeared for the purpose of raising the question of whether the plaintiff was a bona fide resident of the state and as such entitled to invoke the jurisdiction of its courts, that the plaintiff is a bona fide resident, is conclusive upon the defendant therein on an application made to the District of Columbia for modification of the alimony provisions of a decree of divorce *a mensa et thoro* therein rendered.

In 17 Amer.Juris, § 967, p. 150, we find the following:

> "The doctrine of res judicata as a bar, and as a collateral estoppel, applies to a valid foreign decree of divorce. Such doctrine, moreover, is often applied to prevent an attack on a foreign decree as invalid, if the defendant appears in the divorce suit and challenges the jurisdiction of the court, as by asserting that the plaintiff does not have a domicile in the divorce state, but the court finds that it has jurisdiction and grants a divorce, the jurisdictional issues are res judicata in the divorce state as between the parties and their privies, and because of the full faith and credit clause the issue cannot be raised again in another jurisdiction by any person who is bound by an adjudication of the fact of domicile, * * *."

In the Restatement of the Law, Conflict of Laws, in Chapter 10, § 451, appears the following:

> "A party appearing and participating in proceedings in a court of any state will be precluded from questioning the jurisdiction of the court over his person in any subsequent proceeding in that state, or in any other state, if the court in which he appeared purported to render a judgment against him."

In Gunn v. Howell, 35 Ala. 144, 73 Am. Dec. 484, it was said:

> "The first charge asked, objecting to the validity of the judgment against the garnishee, that he was a resident of the State of Alabama, cannot be sustained. The garnishee pleaded that very matter to the jurisdiction of the court, and his plea was overruled. The superior court of Georgia, having jurisdiction over the subject of garnishment, had necessarily authority to determine whether a non-resident, under the laws of that state, could be subjected to the process of garnishment. Wyatt's Adm'r v. Rambo, 29 Ala. 510. Its decision upon that question must be deemed conclusive in favor of the garnishee."

In Turner v. Turner, 261 Ala. 129, 73 So.2d 549, 550, it was said:

> "Three issues are presented upon this appeal. First: Does a court of Alabama have the power and the right to determine for itself the question of domicile, as concerns the validity of the Nevada divorce decree? * * *

> "The recent decision in the case of Rice v. Rice, 336 U.S. 674, 69 S.Ct. 751, 752, 93 L.Ed. 957, is determinative of the first issue raised on this appeal. There, the Supreme Court of the United States held:

> "'No personal service was made upon respondent, nor did she in any way participate in the Nevada proceedings. She was not, therefore, precluded in the present action from challenging the finding of the Nevada court that Herbert N. Rice was, at the time of the divorce, domiciled in that state.'"

But the respondent takes the view that the foregoing rule does not apply in the instant case because the California decree of divorce entered April 3, 1957, is an interlocutory decree reading in part, as follows:

"* * * and it appearing to the Court that the Defendant's plea in abatement was denied and that said Defendant was a resident of California at the time of filing the within proceeding * * *.

"Now, therefore, it is hereby ordered, adjudged and decreed, that the Plaintiff is entitled to an Interlocutory Decree of Divorce from the Defendant upon the ground of Defendant's extreme cruelty toward Plaintiff, and such Interlocutory Decree of Divorce is hereby entered accordingly. * * *."

The theory is that an interlocutory decree lacks the element of finality essential to a proper application of the principle of res adjudicata and entitling it to credit under the full faith and credit clause of the Federal Constitution. Cases are cited to support this view. For example, we refer to Crayne v. Crayne, 54 Nev. 205, 13 P.2d 222, 84 A.L.R. 716. In the Crayne case, however, the respondent made no appearance in the California Court and the interlocutory decree rendered by the California Court was a default decree. In the instant case we call attention to the fact again that the interlocutory decree of divorce in the California Court was entered after Capt. Aufill, respondent therein, entered a special appearance, filed a special plea to the jurisdiction of the California Court, offered evidence, and had the issue resolved against him on December 17, 1956, the decree being, in part, as follows:

"Hearing on plea to the jurisdiction of the Court * * *.

"It is ordered that the plea for abatement must be denied. It is further ordered that the Defendant be granted 30 days to answer."

We find no case exactly similar to the case at bar and are not willing to say that because the California decree of divorce was an interlocutory decree of divorce, there was no decree which will be regarded as res adjudicata on the question of jurisdiction.

In Sutton v. Leib, 342 U.S. 402, 72 S.Ct. 398, 402, 96 L.Ed. 448, the Supreme Court of the United States, referring to its decision in Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82, 157 A.L.R. 163, where Tennessee refused full faith and credit to a North Carolina judgment for arrears of alimony on the ground of lack of finality in North Carolina, pointed out that the North Carolina judgment was final and therefore enforceable under the full faith and credit clause, saying:

"In this way the Full Faith and Credit Clause performs its intended function of avoiding relitigation in other states of adjudicated issues."

The fact that the decree of divorce of the California Court is an interlocutory decree in the present case, does not in our judgment change the general rule.

At this point we divert long enough to say that it makes no difference that Capt. Aufill entered a special appearance in the California Court and not a general appearance. So far as the question of jurisdiction is concerned, he was personally before the California Court. Oliver v. Kinney, 173 Ala. 593, 56 So. 203; Turner v. Turner, 261 Ala. 129, 73 So.2d 549.

The respondent also takes the position that since the decree of the California Court was based upon fraud, it is not entitled to full faith and credit under the United States Constitution, art. 4, § 1.

It will be recalled that the bill filed by the petitioner in the State of California alleges that she had been a resident of California for more than one year next preceding the filing of the bill. It is argued that since her husband Capt. Aufill was a

resident of Alabama, which was her residence, she could not have been a resident of California for the requisite period even if she had left her husband and established her own domicile in California.

In Wilkes v. Wilkes, 245 Ala. 54, 16 So. 2d 15, 16, it is said:

"The courts of a state can have no jurisdiction over the marital status of persons, neither of whom is domiciled there. A simulated or concocted case based on false allegations and proof, although regular on the face of the proceedings, is a fraud on the court granting the divorce, as well as the adverse party having no actual notice and consequent opportunity to defend. Such a decree has no extraterritorial effect and is subject to challenge in the domicile of both parties in a direct proceeding inter partes. * * *."

The respondent alleges that California requires "one year residence of plaintiff before filing a divorce suit," and that Mrs. Aufill "made * * * a willfully false statement and practiced fraud and deceit upon the Superior Court of San Mateo County," in that she alleged that she had been a bona fide resident of California for one year prior to filing the suit, whereas she had actually lived in Alabama until a few weeks prior to the filing of the suit.

■ The question really involved is a question of domicile. Ex parte Weissinger, supra. And in order to prove fraud and deceit it must be shown that Mrs. Aufill had not been domiciled in California for a year prior to filing the suit. This may not be shown merely by showing that she had not personally been present in the state. Ex parte Weissinger, supra; Penn Mutual Ins. Co. v. Fields, D.C., 81 F.Supp. 54, 57.

The question of whether or not a fraud was involved in the California proceedings must be resolved against respondent. In order to establish fraud it must be shown that Mrs. Aufill was domiciled in Alabama when she went to California and filed suit for divorce. The respondent seems to treat this proposition as if it may be assumed that she was not domiciled in California just because neither she nor her husband had lived in California since they left California when he received orders from the army to go on active duty outside the state.

■ The very question was litigated in the California Court, Captain Aufill making his special appearance in order to put in issue the fact that Alabama was her domicile. This issue was decided by the California Court to the effect that Captain Aufill had never terminated his California domicile. Respondent admits that the wife's domicile is the domicile of the husband. Captain Aufill is estopped from litigating the very same issue again. In order to set aside the adjudication of a sister state the fraud pleaded must present some issue which was not litigated and which the parties did not have an opportunity to litigate in the court of a sister state.

Mrs. Aufill went to California and filed her suit, swearing that she was a resident of California. It cannot now be said that she was not a resident of California. We cannot now say that she swore falsely to get the California Court to take jurisdiction of her suit for divorce. Authorities supra.

■ We conclude that the respondent was in error in denying the special plea filed in the Alabama Court by Velva M. Aufill. It results that the writ of mandamus is granted and the respondent is directed to vacate the ruling denying the special plea of petitioner in the Dale County Circuit Court, in Equity, and to enter an order upholding her plea.

Writ granted.

LAWSON, SIMPSON, GOODWYN and MERRILL, JJ., concur.