Rel: February 20, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2025-1024

_____

## Ex parte K.S.

## PETITION FOR WRIT OF MANDAMUS

## (In re: K.S.

## v.

## R.A.K.)

## (Marshall Juvenile Court: CS-25-900077)

FRIDY, Judge.

K.S. ("the mother") petitions this court for a writ of mandamus directing the Marshall Juvenile Court to vacate its order denying her motion to transfer this action to the Mobile Juvenile Court and to enter

an order transferring the action to the Mobile Juvenile Court. For the reasons set forth herein, we grant the mother's petition in part, deny the petition in part, and issue the writ.

Background

The materials submitted in support of and in opposition to the mother's mandamus petition indicate that the mother and R.A.K. ("the father") were in a relationship and that a child, H.C.K.-B. ("the child"), was born of that relationship in December 2024. On November 7, 2025, the father filed in the Marshall Juvenile Court a verified petition to establish paternity pursuant to § 26-17-601, Ala. Code 1975, part of the Alabama Uniform Parentage Act ("the AUPA"), § 26-17-101 et seq., Ala. Code 1975. He also sought sole physical custody of the child or, alternatively, asked that the mother and he share joint physical custody. The father attached an affidavit to the paternity petition in which he said that he and the mother had lived with his grandmother, C.B. ("the paternal great-grandmother"), for two years in Marshall County but that on November 2, 2025, the mother had taken the child with her to the home of her parents ("the maternal grandparents") in Mobile County. In the paternity petition, the father asked for emergency relief, specifically,

that the Marshall Juvenile Court direct the mother to return the child to Marshall County immediately and to permit him access to the child.

On November 10, 2025, the Marshall Juvenile Court entered an order directing the mother to return the child to Marshall County pending further order of the court and scheduled a hearing for November 19, 2025, to consider pendente lite support for the child. On November 11, 2025, the mother filed a motion to dismiss, pursuant to Rule 12(b)(3), Ala. R. Civ. P., on the basis that the father's action had been brought in an improper venue or to transfer the action to the Mobile Juvenile Court. In the motion, the mother claimed that she and the child had resided at the maternal grandparents' home on Dauphin Island in Mobile County since November 2, 2025, and that, therefore, venue was proper only in Mobile County. The mother relied on the venue statute applicable to actions brought under the AUPA, which provides:

> "Venue for a proceeding to adjudicate parentage is in the county of this state in which:
>
> "(1) the child resides;
>
> "(2) the defendant resides;
>
> "(3) a proceeding for probate or administration of the presumed or alleged father's estate has been commenced; or

"(4) the plaintiff resides, only if the circumstances in subdivisions (1), (2), or (3) do not apply."

§ 26-17-605, Ala. Code 1975. The Marshall Juvenile Court set the mother's motion for a hearing at the same time as the hearing to consider pendente lite support for the child.

At the outset of the November 19 hearing, the Marshall Juvenile Court limited the scope of the hearing to the issue of venue. It noted that the parties had stipulated that the father was the presumed legal father of the child, who was then ten months old, but that the issue of paternity would be decided in a subsequent hearing in either the Marshall Juvenile Court or another court once the issue of venue was determined.

At the hearing, the mother testified that she had decided to leave the home she and the child shared with the father on October 31, 2025, because, she said, she was afraid to stay with the father any longer. The evidence tended to show that the mother and the father had a volatile relationship. The mother testified regarding two incidents -- one in the fall of 2023 and the other in November 2024 -- in which, she said, the father left bruises on her arm or grabbed her arm so tightly that his fingernails drew blood.

4

Regarding the night of October 31, 2025, the mother said, the father and she were going to take the child trick-or-treating, but she and the father had argued because of the length of time she was taking to get ready. She said that she told the father that she would drive the child and him to go trick-or-treating but that the father "wasn't okay with that." She said that she continued to get ready to go and then told the father that she was going to take the child trick-or-treating without him because, she said, she did not want to be around him. The mother said that the father told her that if she took the car, the paternal great-grandmother would report to the police that she had stolen the car. She also said that the father and the paternal great-grandmother were following her around the house screaming at her, so she did not take the car and, instead, put the child in a stroller and walked off down the street. Ultimately, the mother said, she and the father both took the child trick-or-treating that night, and she stayed at their house that night. However, the mother said, the next day she called the maternal grandparents at their home on Dauphin Island and asked them to come to Marshall County to get her and the child. She said that she and the child stayed with the maternal grandparents at a rental house in Marshall County

5

the night of November 1, 2025, and that they left for Dauphin Island the next day, November 2, 2025.

The mother testified that, when she left Marshall County, she did not intend to return. She said that she had obtained a new driver's license that indicated that she lived at the maternal grandparents' Dauphin Island address and that she had filed a change-of-address form with the United States Postal Service. She acknowledged that she had not signed a lease with the maternal grandparents, with whom she and the child were living, and that she could leave there whenever she wanted.

The mother testified that she had left clothes and animals in Marshall County and had instructed the father on how to feed the deer she cared for. She said that she intentionally misled the father into believing that she intended to return to Marshall County because, she said, she was worried that he would come to Mobile County if he believed that she had left him permanently.

Because of time limitations the Marshall Juvenile Court set for the hearing, the father's testimony was brief. He said that when he commenced the paternity action, he believed that the mother would be returning to Marshall County. He said that, the week after he filed the

6

paternity petition, he learned from the mother that she would not be returning. He said that, when he commenced the paternity action, he considered the child's residence to be the house he and the mother had shared in Marshall County.

On November 21, 2025, the Marshall Juvenile Court entered an order denying the mother's motion to dismiss or to transfer the action to the Mobile Juvenile Court. In its order, the Marshall Juvenile Court found that the mother and the father had lived together in Marshall County until November 2, 2025, when the mother relocated to Mobile County with the child. When she left Marshall County, the Marshall Juvenile Court found, the mother told the father that her absence from the county was temporary and that she and the child would be back, but she testified that she had "lied to the [father] to escape alleged abuse at [his] hands." However, the Marshall Juvenile Court found, "[i]t did not appear from the testimony … that these allegations were of an emergent nature, but of supposed incidents prior to the birth of the child."

The Marshall Juvenile Court cited the father's testimony that, when he filed the paternity petition, he believed that the mother and the

child's residence was still in Marshall County. It then explained its

rationale for denying the mother's request for a change of venue, writing:

> "In this case, the [father] when filing the litigation had a reasonable belief that the child's residence was Marshall County. As he filed this petition, he could have logically relied upon the statements by the [mother] that she was not permanently relocating to Mobile County and that her residence remained Marshall County. Additionally, it cannot be considered within the spirit of the venue statute for one parent to have the exclusive right, solely through temporary possession of the minor child to change said residence, individually on that parent's whim. Sleeping a handful of nights in a relative's house without any binding agreement to remain is no different than acquiring a hotel room for the purpose of 'establishing residence.' If that were enough, then whomever retains the child after a disagreement on Halloween night could rent a room in any county in this state, claim residence for themselves and the child to require venue in that county. The [mother] may very well now intend to remain in Mobile County as a resident, but that is not relevant to the question of venue. What is relevant are the circumstances as a petitioner may know at the time of filing. The [father] initiated this action with the understanding that the child's residence was Marshall County based on his own knowledge along with reinforcement by the [mother] informing him she and the child were coming back. That's good enough for this Court to find that venue was proper and within the statutory requirement."

The mother filed her petition for a writ of mandamus with this court

on December 3, 2025.

8

## Standard of Review

The proper method for obtaining review of an order denying a motion for a change of venue in a civil action is to petition for a writ of mandamus. See Ex parte Pike Fabrication, Inc., 859 So. 2d 1089, 1091 (Ala. 2002). Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. See Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995). "This Court reviews mandamus petitions seeking review of a venue determination by asking whether the trial court exceeded its discretion in granting or denying the motion for a change of venue." Ex parte Perfection Siding, Inc., 882 So. 2d 307, 310 (Ala. 2003). The burden of proving improper venue is on the party raising the issue, and, on review of an order refusing to transfer an action, a writ of mandamus will issue only if the petitioner makes a clear showing of error on the part of the trial judge. See Ex parte Pike Fabrication, Inc., 859 So. 2d at 1091. Moreover, when the trial court's order denying a motion for a change of venue is based on oral testimony,

9

this court applies the ore tenus standard to review disputed issues of fact. Ex parte L.B., 304 So. 3d 222, 225 (Ala. Civ. App. 2020). That standard requires that a trial court's ruling on a motion for a change of venue is presumed to be correct, and this court will not reverse the trial court's decision on the motion unless it is plainly and palpably erroneous. Id.

Analysis

The mother contends that the Marshall Juvenile Court erred in denying her motion to transfer the father's paternity action to the Mobile Juvenile Court because, she says, she had moved to Mobile County with the child on November 2, 2025, and the two of them resided in Mobile County when the father commenced the paternity action five days later, on November 7, 2025. She contends that, to the extent that the Marshall Juvenile Court implied that the mother and the child still resided in Marshall County when the father commenced the paternity action, that finding, she says, is based on an incorrect standard.

When ruling on a motion to transfer an action to another venue, the trial court must determine whether venue was proper at the time the action was commenced. Ex parte Canady, 563 So. 2d 1024, 1025 (Ala. 1990). As noted above, the venue statute relevant to this AUPA action

10

provides, in pertinent part, that, in a paternity action, venue is proper in the county in which the child resides <u>or</u> in which the defendant, in this case the mother, resides. § 26-17-605(1) and (2).

In <u>Ex parte L.B.</u>, 304 So. 3d 222, this court addressed what constitutes a "residence" for purposes of determining proper venue, observing that Alabama, and, indeed, most jurisdictions, consider the terms "residence" and "domicile" to be synonymous, "'denot[ing] the place where the person is deemed in law to live and may not always be the place where the person is actually dwelling.'" 304 So. 3d at 226-27 (quoting <u>Ex parte Sides</u>, 594 So. 2d 93, 95 (Ala. 1992)). We then quoted the following from <u>Ex parte Weissinger</u>, 247 Ala. 113, 117, 22 So. 2d 510, 514 (1945):

> "'A person's domicile is that place in which his habitation is fixed, without any present intention of removing, and it embraces (1) the fact of residence and (2) the intention to remain. As a general proposition a person can have but one domicile, and when once acquired is presumed to continue until a new one is gained facto et animo, and what state of facts constitutes a change of domicile is a mixed question of law and fact. <u>Lucky v. Roberts</u>, 211 Ala. 578, 580, 100 So. 878, 879 [(1924)], and cases cited.'"

<u>Ex parte L.B.</u>, 304 So. 3d at 227. The party who claims a change of domicile has the burden of establishing that change, and, "'"where facts

11

are conflicting, the presumption is strongly in favor of an original, or former, domicile, as against an acquired one."'" Id. at 227 (citations omitted).

The mother contends that the Marshall Juvenile Court's determination that venue was proper in Marshall County was based on its finding that the father had "a reasonable belief that the child's residence was Marshall County" but, she argues, nothing in Alabama's law permits venue to be determined based on a party's subjective belief of the other party's county of residence. The mother says that it was her intention to mislead the father so that he would subjectively believe that she and the child would be returning to Marshall County but that she, in fact, had no intention of returning with the child to Marshall County. She argues that the finding of the county of residence for her or the child must be based on the objective evidence, which, she says, showed that she had obtained a new driver's license and had submitted a change-of-address form indicating that, at the time the father filed the paternity petition, she resided at her parents' residence in Mobile County.

The county in which the mother and the child resided at the time the father commenced the paternity action was in dispute. However, we

12

have found no cases that permit a determination of residency to be based on the subjective belief of the party filing a petition or complaint regarding where another party lives or does business. To the contrary, as stated above, a determination of residency, which is key to venue in this case, relies on an objective standard: where does the person reside and does the person intend to remain there. Ex parte L.B., 304 So. 3d at 227.

We agree with the mother that the Marshall Juvenile Court based its decision that venue was proper in Marshall County on an incorrect standard -- the father's subjective belief that the mother and the child resided in Marshall County and not Mobile County -- rather than the proper, objective standard set forth in Ex parte L.B. As a result, we order the Marshall Juvenile Court to set aside its order denying the mother's motion to dismiss or to transfer the action, to reconsider that motion in light of the proper standard based on the evidence adduced at the hearing and otherwise, and to enter a new order disposing of that motion. Of course, the issuance of this writ should not be construed as expressing this court's view on the proper disposition of the mother's motion; instead, we hold only that the Marshall Juvenile Court should reconsider the

13

motion in the light of the proper standard to be applied in determining residency for purposes of venue under the AUPA.

Conclusion

Because the Marshall Juvenile Court applied an incorrect standard in determining that venue is proper in Marshall County, we grant in part the mother's petition for a writ of mandamus. The Marshall Juvenile Court is directed to vacate its order of November 21, 2025, denying the mother's motion to dismiss or for a change of venue, to reconsider the issue of venue in a manner consistent with this opinion, and to enter a new order disposing of the mother's motion. Accordingly, we deny the mother's mandamus petition insofar as it requests that we direct the Marshall Juvenile Court to transfer the father's paternity action to the Mobile Juvenile Court.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Moore, P.J., and Edwards, Hanson, and Bowden, JJ., concur.