# *Ex parte* Dowe.

## *Mandamus.*

1. *Inebriate's estate; sections* 2889-92 *R. C. in relation to, construed.*—An inebriate, removed by a court of chancery from the management of his estate, (under the provisions of the Revised Code, sections 2889-92), to prevent his wasting it, and thereby bringing his family to want, cannot thereafter create any debt which will constitute a charge against the estate, thus in the custody of the court. The court has no power, on petition of a creditor, to order a sale of real estate thus in its custody, and the statute confers no authority upon the trustees to sell for that purpose.

2. *Debt created by inebriate ; when may be allowed.*—A debt contracted by the inebriate and his wife, after the appointment of a trustee, for the education of a son, suitable to his fortune and degree in life, may be allowed by the court, and ordered paid by the trustee out of the income ; and when thus allowed, the amounts and times of payment should not be left to the discretion of the trustee, but the court, with the aid of the master, should ascertain the condition of the estate, and the needs of the family, and then direct the times and modes of payment, so as to discharge the debt gradually out of the income, without unduly interfering with the maintenance of the family.

3. *Same ; when mandamus will lie.*—If the trustee fail or refuse to pay, on application of the creditor, the court should ascertain the condition of the estate and the needs of the family, and direct payment accordingly, and on refusal to make such inquiry, will be compelled to do so by *mandamus.*

4. *Same ; when rule nisi will be discharged.*—The death of the inebriate, pending the proceedings on the motion for a *mandamus*, being brought to the knowledge of this court by the return and answer to the rule *nisi*, the rule will be discharged, leaving the creditor to pursue his legal remedy against the administrator of the estate ; and costs will not be allowed against the trustee, he not being a party to the motion.

Application for a *mandamus*, or other appropriate writ, to the Hon. HURIOSCO AUSTILL, chancellor of the southern chancery division, presiding in the chancery court at Montgomery. The material facts on which the application is based, are fully stated in the opinion of the court.

D. S. TROY, for petitioner.—The chancellor having refused to take notice of, or to entertain the petition presented to him, the former decisions of this court show that *mandamus* is the proper remedy.—2 Brick. Dig. 239. The petition of Becker, the husband and owner of the property, to have the debt paid, and the decretal order of the court, that the debt should be paid out of the estate of Becker in the hands of the trustee, gave the creditor a *jus in re*, a right to be paid out of the trust funds. The petition of Dowe is to enforce this right, this *jus in re*, and to ask the court to determine

VOL. LIV.

the time and manner of its enforcement, instead of leaving the creditor to the discretion of the trustee. The right of the creditor having been thus established by the petition of Becker and the decretal order, therefore, the creditor had the unquestionable right to proceed by petition as of course.— 3 Daniels' Chan. Pr. 1801, *et seq.*

HENRY C. SEMPLE, *contra.*

MANNING, J.—Caroline Becker, by her next friend, filed her bill in the chancery court at Montgomery in December 1868, against her husband Nicholas Becker—alleging that by reason of intemperance, he had become unfit for the management of his estate—had a wife (complainant) and several minor children, who, from his conduct, were in danger of being brought to poverty and want, and had a considerable estate, chiefly in Montgomery—and praying that this estate be preserved from further waste, that a trustee be appointed by the court to take charge of and manage it, and for general relief. Whereupon the court appointed George H. Todd trustee to take charge of and manage the estate for the benefit of Becker, his wife and their children, according to section 2391 of the Revised Code, and caused an injunction to be issued restraining Becker from any interference therewith.

In 1871 defendant Becker filed his petition in the cause, setting forth what had been done therein by the court; that the property of his estate was worth about $40,000, and the annual income thereof amounted to about $4,000, and that the allowance of $75 a month, made to him under a previous order, was insufficient; whereupon he asked that it might be increased to the sum of $100 a month, which was accordingly done. He also, in the same petition, set forth that in October, 1869, he and his wife having agreed that their son, Nicholas Edward Becker, then nearly fifteen years old, ought to be taken to Germany to be educated, together borrowed of one C. Lineham $1,000, and executed to him their promissory note therefor; with which money he, going with his son, took him to Germany, paid the traveling expenses of both, and left the residue with a brother of petitioner there, to be expended in the education of the son; and petitioner prays that the trustee, Todd, be required, out of the estate in his hands as trustee, to pay that note. The chancellor ordered that the trustee pay the same, as from time to time he should be able, out of the income of the property, without interfering with the allowance made to Becker, or the proper support of his wife and children, or the education of

his children.   The note was to be discharged out of the surplus.   This order, and all other orders of the court upon this petition, were made after the answer of Todd, the trustee, was filed, in which he showed, amongst other things, that the income of the trust estate in his hands, amounted, after payment of taxes, repairs and premiums for insurance, to about $3,000 a year.

The present petitioner, Michael Dowe, is now the owner of the promissory note executed to Lineham, and was originally a lender of a portion of the money for which it was given.   In his petition, after setting this forth, and the previous petition of Becker, and the decree thereupon, he alleges that certain payments were made in compliance with the order of the chancellor, toward payment of the note, to-wit, about $608, in the course of the year 1872, and $20 in 1873, but nothing since.   And he prays the chancellor to require the trustee to pay the balance of the note, and if necessary for that purpose, to sell a portion of the property, in order to enable him to do so.   And the chancellor having refused to make any other order to that end, than the one previously made, and having dismissed the petition, application is now made to this court for a mandamus or some other process to require the chancellor to compel the trustee to pay the note.   This is the only matter now before us.

The sections of the Revised Code under which Mrs. Caroline Becker instituted the proceedings begun by her bill, are 2389 to 2392 inclusive.   They authorize the chancellor—the allegations of the wife's bill being established—to deprive the husband of all further control over his estate, and provide for its safe keeping by the appointment of a trustee.

"The trustee must superintend the affairs of the estate, and from the avails thereof provide for the support of the husband, wife and children, and for the education of the latter; making annual returns thereof to the chancellor," and

"Pending the suit the chancellor must by injunction, or otherwise, secure the estate against further waste; but no decree affects the rights of creditors acquired previous to the institution of the suit."

This is a new and very important jurisdiction granted to the chancery courts.   The provisions of the Code on the subject are brief and meagre, and there have been no decisions of this court in exposition of them.

For the present it is sufficient to say that it is clear from the terms of the statute, that when by reason of intemperance, a man who has a family and estate, is found to be unfit, by reason of intemperance, to manage his estate, and it is in danger, from his improvidence, of being wasted and his

family in danger of being thereby brought to poverty and want, and in consequence thereof, a chancery court, in pursuance of law, takes charge of his property, deprives him of all control over it, and appoints a trustee to manage it under the direction of the court, the law intends, further, that it shall not be in the power of the displaced owner to create any debt which shall be a charge against the estate, so in the custody of the court, and under the management of a trustee appointed by and responsible to it.   The whole object of the enactment would be defeated if such charges could be created.

But, the property is still to be administered for the benefit of the husband, wife and children; and the important duty of seeing to it that this is done faithfully, economically and with a due regard to the condition and fortune of the family, is devolved on the court of chancery; to which the trustee is required by statute to make annual returns or reports of his management.

The estate of this inebriate consists chiefly of rent-producing real property.   This the trustee has no power to sell. No authority is conferred on the court by these enactments, upon the petition of a creditor, to cause a sale of any of his real property taken by virtue thereof under its charge. And in the analogous jurisdiction of the Lord Chancellor in England of the estates of lunatics, before the Stat. of 43 Geo. 3, c. 75, enacted for the remedy thereof, Lord Eldon distinctly disclaimed the power to require a purchaser to take such a title as could be transferred by any decree he could make upon the petition of a creditor of a lunatic.—*Ex parte Dikes*, 8 Ves. 79.

The just expenses created in carrying out the policy of the statute, the preservation of the estate, support of the husband, wife and children, and education of the latter, should be discharged, if possible, out of the income.

In reference to the present claim, the petition for the payment of it was originally filed by Mr. Becker himself, and the chancellor ordered it to be paid without objection, apparently, from any person, out of the income after providing for the family.   The subject matter had thus been brought before the court, and it had taken cognizance of it.   The present petitioner, the creditor, calls the attention of the court to its own previous action thereupon, and asks that the court compel the trustee, who, during the first year after the order was made, paid over $600, and soon after discontinued all payments, to discharge the residue of the debt. There is no denial of its correctness.  It was contracted by the husband and wife jointly, for the laudable purpose of

educating their oldest son. It does not appear, in view of the value of the estate, to have been an improvident expenditure. And it seems to us that provision ought to be made for the gradual payment of it, out of the income of the estate. This may, it is true, make it necessary to reduce the allowances for the benefit of the family; but, they ought to be willing to live more economically in order to enable payment to be made of a meritorious debt.

The chancellor seems to have left this duty to be discharged or not, at the option or according to the judgment of the trustee. In our opinion he ought to ascertain, with the aid of the master, and determine how much yearly, or quarterly, or monthly—according as the collections of rent may be made—shall be paid, or what proportion of the income shall be so paid, by the trustee toward the extinguishment of the debt, and order such payment to be made, and due credits entered and vouchers taken therefor.

It will, therefore, be ordered that a writ of *mandamus* to this effect be issued to the chancellor, unless on or before the third Monday of June next, he show cause to this court why said writ shall not be issued.

On the chancellor's return and answer to writ of *mandamus nisi*, the following opinion was delivered by—

MANNING, J.—By the return and answer of the Hon. Huriosco Austill, chancellor, to the order for a mandamus *nisi* in this cause, it appears that Nicholas Becker, the inebriate whose estate was for the preservation and management of it, placed in the control of George H. Todd, trustee, under the superintendence of the chancery court in Montgomery, according to the statute on the subject, departed this life before the return day of said writ, or the chancellor could comply with the precept thereof. Upon the happening of this event, the authority and powers of the trustee ceased. Nothing remained for him to do but to settle up his administration of the trust in the chancery court, with the representatives of the deceased, and to turn over to them the funds or property in his possession.

The administration of the estate, if the deceased died intestate, passes, of course, to administrators appointed by the court of probate, whose duty it will be in due time to pay the debts, and that to petitioner as one of them, if the assets be sufficient to discharge them all—and if not, to make partial payment *pro rata* of all debts not preferred. The petitioner, Michael Dowe, has no such lien on the funds or property in the hands of the trustee, as entitles him to pri-

ority of payment over other creditors of deceased, or to a continuance of the trusteeship of Todd for the making of such payment. Nor can petitioner be regarded as now a necessary or proper party to the settlement of the trust.

The death of Becker abates the proceedings on this motion; and, under the circumstances, costs are not awarded against any one. Todd, the trustee, not being a party, we cannot award them against him, as we otherwise should be inclined to do. [On the subject of costs in mandamus cases, see High's Extraordinary Remedies, § 518; *Ex parte Garland*, 42 Ala. 559.]

The rule for a mandamus is discharged.