# Jones *v.* Semple.

## *Statutory Detinue for Mules, by Mortgagee.*

1. *Inebriates' estates; effect of decree; power to contract, or bind after-acquired property.*—A decree in chancery removing an inebriate from the further management and control of his estate, and providing for its safe-keeping by the appointment of a trustee (Code, §§ 2502–03), operates only on the property specified in the bill, and neither takes away from the inebriate the power to contract debts binding himself personally, nor deprives him of the power to convey or charge after-acquired property.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by H. A. Jones, against W. T. Williams, to recover four mules, with damages for their detention; and was commenced on the 24th January, 1889. The rulings of the court on the pleadings and evidence, and the general charge in favor of the defendant, given on request, are assigned as error. The opinion states all the material facts.

TOMPKINS & TROY, for appellant.

BRICKELL, SEMPLE & GUNTER, *contra.*

CLOPTON, J.—Section 2502 of the Code of 1886 authorizes: "When any unmarried man, over twenty-one years of age, is, by reason of intemperance, unfit to manage his estate, or is wasting or squandering it, and thereby in danger of being reduced to poverty and want, his brothers or sisters, or next of kin, or any or either of them, may themselves, or by their next friend, if minors or married women, file their bill in chancery to preserve the estate of such intemperate person from further waste, and for general relief." And section 2503 declares: "The bill provided for in the preceding section must specify the cause for which relief is prayed, and the estate proposed to be secured, and such person of intemperate habits must be made a party defendant thereto; if the allegations of

[Jones v. Semple.]

the bill are admitted, either expressly, or by a failure to answer thereto, or it is established by proof that the allegations of the bill are true, and that such person is wasting his estate, or is for the cause alleged unfit for its management, so that such person will probably be reduced to want, the chancellor must deprive him of all further control over it, and provide for its safe-keeping by the appointment of a trustee."

Under these sections, a bill was filed by R. S. Williams, who is the father of William T. Williams, against him; and on admission of the truth of the allegations, a decree was rendered, July 13, 1887, depriving him of all power and authority or control over his estate, and appointing his father trustee of the same. The present action was brought by appellant to recover certain personal property, to which he derives title by a mortgage executed by W. T. Williams to secure a debt contracted after the rendition of the decree. It was originally brought against Williams, but, his death having occurred during the pendency of the appeal, was revived in the name of his personal representative. The special pleas of defendant set up the proceedings in equity and the decree rendered thereon, and aver with minute detail that the debt was contracted, and the mortgage executed, after its rendition. A demurrer to the pleas having been overruled, plaintiff filed replications thereto, the demurrer to which was sustained.

The first question raised by the pleading relates to the jurisdiction of the City Court, sitting in equity, to render the decree; plaintiff contending that the jurisdiction, being statutory and limited, does not attach, and is not drawn into exercise by a bill filed by the father, when there are brothers and sisters living; that, in such case, the father does not occupy the relation which the statute provides must be occupied by the person instituting the proceeding. While the question admits of serious doubt, in view of the case made by the record, of the construction we place upon the statute, and especially the death of Williams, which terminated the powers and authority of the trustee, the question does not seem to be practically important or material, and its decision is unnecessary. We shall, therefore, avoid passing upon the validity of the decree, and address our consideration to an inquiry which is of practical importance; that is, whether the decree operates to deprive the person of intemperate habits of the power to contract debts after its rendition, which bind him personally, and are not charges against the estate under the management of the trustee, and to secure the same by mortgage on property not mentioned in the bill, or subsequently acquired by purchase or otherwise.

The statute confers a new jurisdiction, encroaches upon the rights of person and property, and imposes disabilities. A well recognized rule is, that statutes of such or like character will not be enlarged by construction, so as to affect common-law rights, beyond the express declaration of the terms employed, or clear implication, when fairly and reasonably construed according to their natural import. Accordingly, a statute invalidating preferences in assignments for the benefit of creditors has been construed not to avoid a conveyance, by deed or mortgage, of a part of a debtor's property to a creditor in composition of his debt.—Endlich on Stat. §§ 341, 342. Under this rule, a statute prescribing that an inn-keeper may exempt himself from his common-law liability by keeping posted on his door, or other public places in his hotel, written or printed notices that his guests might leave their valuables with him, his clerk or agent, for safe-keeping, was construed to mean that he must keep the notices posted on the doors of all the rooms occupied by guests.—*Lanier v. Youngblood*, 73 Ala. 587. Under this rule, the statutes creating and defining the separate estates of married women, formerly in force, were construed not to enlarge the capacity of the wife to contract, or to take, hold or administer property, in exclusion of the marital rights of the husband, further than the words expressly declare, when construed according to their natural and general signification. *Cook v. Meyer*, 73 Ala. 580. These instances illustrate the application of the rule, that a statute which affects the right of the citizen to contract with reference to his own property, should not be enlarged by construction, so as to restrict or destroy this right, beyond the manifest intention of the legislature.—*Collier v. Paulk*, 69 Ala. 58.

The implication may be conceded, that the effect and operation of the decree are to deprive the owner of the power to contract any debt which is a charge against the estate over which the powers and authority of the trustee extend. This may be implied from the provisions of the statute, conferring jurisdiction of person and property upon the Chancery Court, with power to displace the owner's control, and appoint for the safe-keeping of the estate a trustee, with authority to manage and superintend its affairs.—*Ex parte Dowe*, 54 Ala. 258. But, beyond the requirements requisite to the accomplishment and preservation of the legislative purpose and policy, the statute was not intended to encroach upon any rights of person or property, which the owner has by statutory or common law. The statute expresses its purpose and policy—to prevent an unmarried man of intemperate habits from wasting or squandering his estate, whereby he will be in danger of be-

[Jones v. Semple.]

ing reduced to poverty and want, and of becoming a burden to his relatives, or a public pauper. General capacity to make contracts would not defeat the object of the enactment—contracts which can not affect the estate, of the control over which he has been deprived. For the accomplishment of the declared purpose of the statute, and the furtherance of its policy, deprivation of the capacity to contract debts which shall be a charge upon said estate is sufficient. Deprivation of the control of property does not imply abrogation of the power to make contracts binding the party personally, though there is no power to charge the property. A construction of the statute otherwise, would be an enlargement unwarranted by well established rules. The power to contract remains and exists, but the statute interposes and declares, by the clear import of its terms and provisions, that such contracts shall not be charges against the estate.

The next inquiry is, what estate is it against which the displaced owner has no power to charge debts contracted after the rendition of the decree? The proceeding is *quasi in rem*, in that it fixes the *status* of the property, and the relation of the owner to the estate. The estate, which the statute is intended to prevent being wasted or squandered, consists of property having a potential existence, which is liable to be wasted, at the time of the institution of the proceeding; an estate which the court can take into custody, and the chancellor is authorized, by section 2505, to secure, by injunction or otherwise, against further waste; a tangible estate which can be placed under the management and superintendence of a trustee, and from the avails of which it is his duty to provide for the support of the inebriate in a manner suitable to his means and estate.—Section 2504. All the provisions of the statute manifestly refer to and provide for an estate existing at the time of the commencement of the proceeding.

Also, the statute in terms requires that "*the estate proposed to be secured*" must be specified in the bill. Specification of the estate in the bill is essential to put this statutory jurisdiction into exercise, and to bring the estate within the power and jurisdiction of the court. By this requirement, the power of the court is restricted to the estate proposed to be secured and specified in the bill. This is the particular estate, over which the chancellor has power, under the statute, to deprive the inebriate of control, and to provide for its safe-keeping by the appointment of a trustee. The court can only act on the subject-matter brought under its statutory power by appropriate and essential averments.

Governed by well established rules, we construe the statute

[McCullough v. Jones.]

not to confer power over property not specified in the bill as
the estate proposed to be secured, and not to abrogate the
power to make contracts, though it prohibits debts contracted
after the rendition of the decree being charged against such
estate.   It certainly is not the intention or policy of the stat-
ute, by depriving the unfortunate inebriate of power to trans-
act any business, to place him in a condition, comparatively,
of compulsory inactivity and idleness, and subject him to the
temptation to descend to lower depths of intemperance—to
confirm his intemperate habits.

The estate specified in the bill is, the land known as the
"Bradshaw plantation," a residence and store-house in the vil-
lage of Mt. Meigs, a lot conveyed to Williams by Lawrence
Judkins, one horse and buggy, a gold watch, and a diamond
ring.   The presumption is, this constitutes all the property
which he owned at that time, or, at least, all the estate which
it was deemed necessary to be secured.   While the proceeding
and decree are set up in defense, the pleas fail to aver that the
property included in the mortgage was any part of the estate
mentioned in the bill.   But this is not assigned as ground of
demurrer.   The specific grounds are, want of jurisdiction to
render the decree, and the failure of the pleas to aver that the
trustee had no knowledge of, and did not consent to the
arrangement with plaintiff, and the execution of the mortgage.
The trustee's knowledge and consent are immaterial; he could
not sell or mortgage the trust estate, and could not invest
another with that power.   The third replication does aver that
the debt was contracted, the mortgage executed, and most
of the property included therein was purchased, after the ren-
dition of the decree.   The demurrer to the replication should
have been overruled.   The court also erred in excluding the
evidence offered by the plaintiff, tending to show that the four
mules embraced in the mortgage were purchased by Williams
after the decree was rendered, with money obtained from
plaintiff.

Reversed and remanded.