196 So.2d 702

### Ex parte ALABAMA POWER CO.

### Ex parte Robert Tennent SIMPSON, as Executor et al.

### 3 Div. 258, 258–A.

Special Supreme Court of Alabama.*

March 3, 1967.

* Upon submission of the petitions the Chief Justice and Associate Justices ascertained and declared that no one of them was competent, by reason of disqualification, to sit in the cause. This fact was certified by the clerk of the court to the Governor, under Code 1940, Title 13, § 15, and the Governor thereupon appointed Hon.

Francis H. Hare, Sr., Birmingham, Hon. T. B. Hill, Montgomery, Hon. John P. Kohn, Montgomery, Hon. Frank Tippler, Andalusia and Hon. J. Ed Thornton, Mobile, five members of the bar of the Supreme Court, to constitute a special court for the consideration and determination of such cause.

Martin, Balch, Bingham, Hawthorne & Williams, Birmingham, and Steiner, Crum & Baker, Montgomery, for petitioner Alabama Power Co.

Hill, Hill, Whiting & Harris, Montgomery, for petitioner Simpson.

HARE, Justice.

The plaintiff in each of the two companion cases before us is a Justice of the Supreme Court of Alabama. For that reason, the members of that court have certified their disqualification and pursuant to the provisions of Section 15, Title 13 of the Code of Alabama, this special court has been impaneled to act in their stead to the extent necessary to afford appellate review.

The proceedings presently before the court have arisen from two suits filed in the Circuit Court of Montgomery County, Alabama by Judge Simpson, one of said suits being filed by him in his capacity as Executor of his wife's estate seeking damages for her death as a result of personal injuries sustained by her while riding in an automobile operated by her husband, which automobile collided with a utility pole, the property of Alabama Power Com-

pany, in the City of Montgomery, Alabama. The other suit was filed by the plaintiff individually for his own personal injuries in the same collision.

Before us now are two Petitions for Mandamus. The defendant, Alabama Power Company, took the usual pre-trial depositions of the plaintiff in both cases and that of the witness, Mr. Reese. During the taking of the depositions, the trial judge made an order requiring the witnesses to answer certain questions which they, respectively, had declined to answer and sustaining the witnesses in their refusal to answer certain other questions. The plaintiff has applied to us for appellate review of the order to the extent that it required him to answer, and the defendant seeks review on the questions to which no answer was required. We have consolidated the two Petitions for Mandamus since they call for the same considerations and decisions.

If we do not issue the writs, it will not be because of any technical reasons. There is no demurrer to either Petition, and we may therefore take the facts therein stated as true and correct.[1] Board of Education of Jefferson County v. State, 222 Ala. 70, 74, 131 So. 239. An answer from the trial judge is not necessary for the reason that the appellate questions are plainly apparent from the averments of the Petitions. There is no controversy as to whether or not mandamus is the *proper remedy*.

The majority of this court is of the opinion that we can pass upon the merits of the Petitions for Mandamus without issuing the rule nisi and without the necessity of an answer or a more complete record.

In Ex parte Garland, 42 Ala. 559, 593, the rule is stated that:

"If the court can perceive plainly that the relator is not entitled to mandamus

1. (But not necessarily sufficient).

upon his own showing, it is proper to proceed to judgment against him."

■ A Petition for Mandamus constitutes a first pleading in the case and the petition itself must show by averments a right to have the act complained of performed, and if the averments do not show such a right, the petition should be dismissed, although those averments are not controverted or denied. Lawson v. Swift, 280 Ala. 227, 191 So.2d 379, Paragraphs 2 and 3.

This is nonetheless true although Alabama seems to have enlarged the scope or field for the issuance of the writ of mandamus as shown by the provisions of Section 1072 of Title 7 of the Alabama Code and the annotations under the heading "Mandamus," under said Section 1072 of Title 7 of the Alabama Code (Volume 3 of the Code, Page 1050) as well as by the cases of Ex parte Tower Mfg. Co., 103 Ala. 415, 15 So. 836; Wilson v. Duncan, 114 Ala. 659, 672, 21 So. 1017, and Ex parte Laurie, 277 Ala. 137, 140, 167 So.2d 705, 707. But we need not decide whether or not a writ of mandamus is *always* limited to cases where an abuse of discretion is shown on the part of the lower tribunal. The question here is whether or not the issuance of a writ of mandamus is so limited where the rulings sought to be reviewed are under the deposition statute.

■ In such cases we think that the issuance of the writ is limited to those where an abuse of discretion is shown. See Ex parte Cypress, 275 Ala. 563, 156 So.2d 916, Paragraphs 4 and 5 where Mr. Justice Harwood states: "However, even under a liberal interpretation of our deposition-discovery statute, we are unwilling to say that the court abused its discretion in the above ruling."

The principle is expressed in 23 Am. Jur.2d on Page 665, Section 270, as follows:

"It is for the trial court, not the appellate court, to pass upon any specific question presented on an application for discovery or upon any question when a particular requirement is too broad. Generally, the trial court's execution of this discretion in applying of discovery rules or in deciding whether or not to order or limit discovery will not be disturbed unless an abuse of such discretion is shown."

The Alabama statute is patterned after Federal Rule 26(b) and our courts have heeded the construction placed upon the Federal Rule. In "Judicial Control Over Discovery," 28 F.R.D. 111, 116, Judge Kaufman said—

"The whole discovery procedure contemplates an absence of judicial intervention in the run-of-the-mill discovery attempt."

Speaking of the resort to mandamus under the federal rules, Prof. Moore (Vol. 4, p. 1743) quotes the United States Supreme Court as saying:

"In strictly circumscribing piecemeal appeal, Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous. The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or, 'usurpation of judicial power.' "[2]

Prof. Moore, in the same volume, on pp. 1776 and 1777 stated that—

"Provision for appeal from discovery orders would also permit the appellate courts to take a more active part in shaping the law of discovery, although too much intervention by the courts of appeals would not be desirable," observing that the trial courts "are closer to the subject than appellate courts."

He concludes the chapter on the subject of the Desirability of Providing Further

2. Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383–384, 74 S.Ct. 145, 98 L.Ed. 106.

Appellate Review with the observation that there is no need for legislation to grant a broader right of review and that any needed flexibility is available through a broader, although a carefully guarded use of the prerogative writs.

■■ The appellate court will not substitute its judgment for that of the trial judge simply because it might have reached a different result had it been in his place nor will it disturb the action of the trial court unless the error complained of was prejudicial and affects the substantial rights of the parties. Sher v. De Haven, 91 U.S.App.D.C. 257, 199 F.2d 777, 36 A. L.R.2d 937, cert. den. 345 U.S. 936, 73 S.Ct. 797, 97 L.Ed. 1363. As a practical matter, it is not feasible for the highest court of the State to supervise in detail the rulings on innumerable questions involved in the practice of taking more or less lengthy depositions in a substantial percentage of litigated cases. This court must content itself with correcting substantial errors of law in such matters when substantial rights of the parties may suffer prejudice that cannot be adequately corrected on appeal. Otherwise the volume of the task imposed upon the appellate court would be too great for any court effectively to perform.

In order to determine whether or not the trial court is shown to have abused its discretion, it is necessary only to set out the questions which it required to be answered and the questions which it did not require to be answered, and to state the rules of law which governed these rulings by the trial judge. We undertake to state these rules both for that purpose and for the further reason that it is of some importance to the bar that they be stated.

The questions propounded and the rulings of the trial court are set forth in the Petitions as follows:

The Court required the answers to the following questions:

4. Q: "Have you ever heard of anybody running an automobile into the power pole which your automobile went into?"

5. Q: "Have your lawyers, to your knowledge, ever heard of anyone running an automobile into the power pole that your automobile went into on April 15th, 1966?"

8. Q: "Again, so the record will be clear, from your own knowledge, Judge, and as the Justice of the Supreme Court of Alabama and with the legal background that you have described in your testimony, can you testify today as to any acts or omissions on the part of the Alabama Power Company which would make the Alabama Power Company liable to you in the two capacities in which you have claimed damages in these two lawsuits?"

9. Q: "And am I correct that you are relying entirely on the advice of your lawyers, Mr. Hill and Mr. Harris in bringing these two lawsuits against the Alabama Power Company?"

10. Q: "And am I correct that this entire lawsuit and the allegations in the complaint are based not on any personal knowledge of yours, but on investigations which Mr. Hill and Mr. Harris have made and in which they have reported to you; is that correct?"

He did not require answers to the following questions:

1. Q: "Well, Judge, there are two suits filed against the Alabama Power Company totaling an addendum of $200,-000.00. On what basis are you asking the Alabama Power Company to pay you individually and as Executor that sum of money?"

2. Q: "Now, what do you say the Alabama Power Company did was wrong?"

3. Q: "Judge, in what way did the City of Montgomery injure you?"

6. Q: "All right, sir. Now, Judge, payment was made by you, or on your be-

half to the Alabama Power Company for the damage done to that pole by your automobile, was it not?"

7. Q: "And the occasion of the damage was on April 15th, 1966, the same events that form the basis of these two lawsuits?"

The first rule of law is contained in the discovery statute itself (title 7, Section 474 (2)):

"It is not ground of objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

■ The statute is to be liberally construed. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

Certain of the questions involve the Work Product Rule. Trial courts are called upon every day to make rulings in the light of that rule, and its clarification is important. On the one hand, the case of Hickman v. Taylor, supra, announces that the deposition discovery rules are to be given a broad and liberal treatment. It abolishes the "fishing expedition" objection and states that either party must disgorge "whatever facts he has in his possession" even "[w]here relevant and non-privileged facts remain hidden in an attorney's file." The defendant below contends that these words practically eliminate any work product rule. Subsequent decisions and the learned text writers have not accorded the *Hickman* decision that sweeping result. In an authoritative work, "Federal Courts", Professor Charles Allen Wright devotes Section 82, beginning on page 312 to the subject "The Rule of Hickman v. Taylor." Incidentally, in that case the court held that the discovery sought was not proper. Professor Wright continues on page 314:

"This does not mean, the court said, that all written material contained or pre-

pared by a lawyer are necessarily free from discovery in all cases."

On the same page he says:

"The burden, though, is on the party seeking discovery of the lawyer's "work product" to establish adequate reasons to justify such production."

and:

"Hickman v. Taylor adopted a middle position between that of the district court, which would have made the Work Product of lawyers normally subject to discovery, and that of the court of appeals, which, by calling such material privileged, would have barred all discovery no matter how pressing the need. The Supreme Court has given the lawyer's work product a qualified immunity from discovery. Such material is discoverable only on a substantial showing of 'necessity or justification' ".

In the Alabama Lawyer for January, 1961, beginning on page 42, Judge Grooms has contributed a scholarly article on discovery and evidence on the Alabama Act involved. Beginning on page 49 he discusses Hickman v. Taylor and the subsequent cases which construe it. Judge Grooms observes (page 51):

"It is thus seen that the broad and controversial paragraph first quoted is hedged about with safeguards which cannot be lightly ignored. * * * it seems that a wholly unwarranted impression has been entertained by a segment of the bar that a client has an unqualified right to discover and to require production of everything his adversary has in his files and in those of his counsel. * * *. There is yet no 'silver platter' doctrine in the field of discovery." Rios v. U. S., 9 Cir., 256 F.2d 173, reversed 364 U.S. 253 [80 S.Ct. 1431, 4 L.Ed.2d 1688].

In 4 Moore's Federal Practice, beginning on page 1381 and ending on page 1419, there is a lengthy chapter entitled "Mean-

ing and Application of the Supreme Court Decision." (Hickman v. Taylor). Beginning on page 1431 there is another lengthy chapter entitled, "The Work Product of the Lawyer Himself."

Essentially, the slogan of those who favor answering all questions is that the purpose of a trial is a search for the truth and the war cry of those who favor greater limitations is that there should be some protection afforded to a lawyer's work product and that he should not be forced to prepare his adversary's case for him.

■ Attempts to epitomize the rule have been made with varying success. Essentially, the rule as we see it is that such material is discoverable only on a substantial showing of good cause, and that the trial judge must be accorded a very wide discretion in making that decision.

■ It makes a difference as to whether the product of the lawyer's work consists of relevant facts, discovered by him and not available to his adversary, upon which he relies to recover, or whether the work product consists of legal theories and contentions upon which he relies to recover upon a given state of facts. The general rule is that claims and contentions need not be answered. McElroy's Law of Evidence in Alabama, Vol. III, Page 24, Section 6, "Claims and Contentions"; Moore's Federal Practice, Vol. 4 2d, Par. 33.17, page 2303; page 2305, Note 17. The defendant cites Hartsfield v. Gulf Oil Corporation, D.C., 29 F.R.D. 163 to the contrary. The case is noted in Moore's Federal Practice, Vol. 4, page 1197, Section 26.18(4), and the text recites that the questions there involved asked for a statement of facts and begins the leading paragraph with the words:

"Discovery of opinions, conclusions and contentions. The weight of authority rejects questions calling for the opinion, legal conclusions, or the contentions of the deponent."

The case of Doucette v. Howe, D.C., 1 F.R.D. 18, held it improper to require a plaintiff to "state fully and in detail what act or acts the defendant did or failed to do which caused you injury." Other cases are cited in 4 Moore's Federal Practice, p. 2306, notes 20, 21 and 22.

The trial court apparently interpreted questions 4, 5, 8, 9 and 10 as inquiring for relevant facts, rather than contentions and opinions. The case of Birmingham Electric Co. v. Lawson, 239 Ala. 236, 194 So. 659 decides that whether or not someone else had run an automobile into the same pole would be relevant evidence.

If questions 6 and 7 are intended to ask if the plaintiff himself paid the Alabama Power Company for the damage done to the pole, the answer could reasonably lead to relevant evidence. McElroy on Law of Evidence in Alabama, Vol. II, page 11, Section 188.91(3) "Offer Tacitly Assuming Liability for Full Damages Receivable." Landham v. Lloyd, 223 Ala. 487, 136 So. 815.

■ The trial court properly declined to require the witness Reese to answer questions 1 and 2, as follows:

1. Q: "Let me put it this way: It would not be something unusual to see Judge Simpson drinking at a party where liquor was served, would it Mr. Reese?"

2. Q: "Have you seen him have a drink at any time since the accident?"

Plainly, the answers to these questions would not be admissible upon a trial and it was well within the court's discretion to hold that the questions are not reasonably calculated to lead to the discovery of admissible evidence.

Judged by these rules, it is not made to appear that the trial judge abused his dis-

cretion or that he committed a manifest error prejudicial to the substantial rights of the parties, and this can be plainly perceived from the Petitions before us without the aid of any further pleadings or record.

The Petitions for Mandamus are therefore denied.

Writs of Mandamus denied.

KOHN and TIPPLER, JJ., concur.

HILL, C. J., and THORNTON, J., dissent.

HILL, Chief Justice (dissenting).

I cannot concur in either the reasoning or the conclusion and order of the majority of the Court in this cause. I think that the rule nisi should be issued in each case.

It is obvious that the majority opinion is based upon the premise, and the opinion so states, that a finding by this Court of an abuse of discretion on the part of the trial court judge is a sine qua non to the issuance of the rule in cases where the rulings sought to be reviewed arise under the pre-trial deposition statute (Title 7, § 474(1) et seq., Code of Alabama Recompiled). Their opinion states: "In such cases" (where the rulings sought to be reviewed are under the deposition statute) "we think that the issuance of the writ is limited to those where an abuse of discretion is shown." In other words, unless an abuse of discretion on the part of the respondent trial judge appears, the writ cannot issue; and, they have denied the writ because there is no averment nor evidence of an abuse of discretion on the part of the trial judge in his rulings on the several questions involved in this case. Their decision is not consonant or consistent with the law of Alabama today.

The general rule, in Alabama as in most of the states, is that the writ will issue to compel the exercise of judicial discretion,

but not to compel its exercise in any particular way. It appears that this Court has through the years recognized two exceptions to this rule:

That the writ will issue:

(1) to prevent an abuse of discretion or to correct an arbitrary action outside of the exercise of a reasonable discretion. Foshee v. State ex rel. Messer, 210 Ala. 155, 97 So. 565; Ex parte Green, 221 Ala. 415, 129 So. 69; and,

(2) to correct errors of inferior tribunals in order to prevent a failure of justice, where such errors are not reviewable on appeal. Ex Parte Tower Manufacturing Co. et al., 103 Ala. 415, 15 So. 836; Ex Parte Weissinger, 247 Ala. 113, 22 So.2d 510,

Attention is directed to the notes appearing in the annotations under the heading "Mandamus" under § 1072 of Title 7 of the Code of Alabama Recompiled (Vol. 3 p. 1050), wherein the codifier recognizes the two exceptions to the general rule:

"In general.—As a general rule a writ of mandamus will not issue to review an exercise of judicial or quasi-judicial discretion, and this rule applies to the approval of official bond. Payne v. Spragins, 207 Ala. 264, 92 So. 466; Mobile Mut. Ins. Co. v. Cleveland, 76 Ala. 321; Ex parte Harris, 52 Ala. 87, 23 Am.Rep. 559. This rule, however, has an exception in this jurisdiction, for in some cases the writ of mandamus has been employed to correct errors of inferior tribunals, and to prevent a failure of justice where there is a clear right and there is an absence of any other adequate remedy, and it has also been employed to prevent an abuse of discretion, or to correct an arbitrary action outside of the exercise of a reasonable discretion. 26 Cyc. 189; Wilson v. Duncan, 114 Ala. 659, 21 So. 1017; Ex parte Tower Mfg. Co., 103 Ala. 415, 15 So. 836; Ex parte Dowe, 54 Ala. 258; Foshee v. State, 210 Ala. 155, 156, 97 So. 565."

The bellwether case on this point in Alabama seems to be Ex Parte Tower Manufacturing Co. et al., 103 Ala. 415, 15 So. 836, in which case the eminent and revered Chief Justice Brickell said:

"2. The writ of mandamus, it may be, has been employed by this court more liberally as a remedy for the correction of the errors of inferior tribunals than would seem consistent with the principles of the common law. If this is true, it is in some degree attributable to the existence of peculiar statutory proceedings, in which errors may intervene, incapable of correction by appeal or other revisory remedy. In other cases, to prevent a failure of justice, or irreparable injury, when there was a clear legal right, and an absence of any other adequate remedy, there has been resort to mandamus. The recent cases of Ex parte Barnes, 84 Ala. 540, 4 South. 769, and Reynolds v. Crook, 95 Ala. 570, 11 South. 412, are illustrative. * * * If an order or judgment or decree is made or rendered, which is not the subject of revision by appeal or other revisory remedy, and yet is erroneous, working injury to the party complaining, and there be no other legal remedy, adequate to the correction of the error and the prevention of the injury, mandamus will be awarded."

In Wilson v. Duncan, 114 Ala. 659, 672, 21 So. 1017, 1019, this Court, in discussing the function of the writ of mandamus, said:

"Generally, the function of a writ of mandamus is to compel a subordinate court to hear and decide a controversy of which it has jurisdiction; or, if the case has been heard, to render a judgment or enter a decree in the cause; but not to direct what particular judgment shall be rendered, or to correct errors, not to control, but compel judicial action; and the writ will not be granted, where full and adequate relief can be had by appeal, writ of error or otherwise. State, [ex rel. Pinney] v. Williams, 69 Ala. 311;

Ex parte State Bar Ass'n, 92 Ala. [113] 116, 8 South. 768 [12 L.R.A. 134].

"But, this is not the limit of the office of that writ. It is sometimes employed to correct the errors of inferior tribunals, and to prevent a failure of justice, or irreparable injury, when there is a clear legal right, and there is absence of any other adequate remedy. We have recently gone over this subject very fully, in the case of Ex parte Tower Manuf'g Co., 103 Ala. 415, 15 South. 836, and it is unnecessary to here repeat what was there said. As illustrative of the application of the remedy to such ends, we refer to Ex parte Robbins, 29 Ala. 71; Ex parte Morgan, 30 Ala. 51; Ex parte Haralson, 75 Ala. 543; Ex parte Barnes, 84 Ala. 540, 4 South. 769; Reynolds v. Crook, 95 Ala. 570, 11 South. 412. In Ex parte Morgan, for instance, to which case reference has already been made,— a case identical in principle with the one before us,—this court held the security not to be in fulfillment of statutory requirements, and a rule *nisi* for *mandamus* to correct that ruling was awarded."

The latest case of this Court enunciating and recognizing the enlargement of the field of operation of the writ in Alabama is Ex Parte Laurie, 277 Ala. 137, 140, 167 So.2d 705, 707, wherein this Court said:

"* * * This Court in Ex Parte Weissinger, 247 Ala. 113, 22 So.2d 510, clearly enunciated the pertinent rule:

'Originally, the function of the writ was to compel judicial action but not to correct errors or direct what particular judgment or decree should be rendered. Wilson v. Duncan, 114 Ala. 659, 672, 21 So. 1017. But this court has permitted a liberal enlargement of the use of the writ so that, "if an order, or judgment, or decree, is made or rendered, which is not the subject of revision by appeal, or other revisory remedy and yet is erroneous, working injury to the party complaining, and

there be no other legal remedy, adequate to the correction of the error and the prevention of the injury, mandamus will be awarded." Ex parte Woodruff, 123 Ala. 99, 100, 26 So. 509; Ex parte Tower Mfg. Co., 103 Ala. 415, 418, 15 So. 836.'

"It results from these considerations that a writ of mandamus should issue forthwith to the learned trial court as prayed for in the petition. So ordered."

The majority of the Court in their opinion, in an effort to support their ruling that, in cases arising under the pre-trial discovery statute (Title 7 § 474(1) et seq., Code of Alabama Recompiled, commonly known as Act 375), the writ is available and should be issued only in cases where an abuse of discretion by the trial court is shown, cite as their only authority for such ruling a brief excerpt taken from the case of Ex Parte Cypress, 275 Ala. 563, 156 So.2d 916:

"However, even under a liberal interpretation of our deposition-discovery statute, we are unwilling to say that the court abused its discretion in the above ruling."

While this gratuitous observation was contained in said opinion, it was not the basis for the ultimate decision of the case; on the contrary, a further examination of that case will show that the court in that case issued the writ as prayed, not because of an abuse of discretion of the trial judge, but because it found that the trial court *"was in error in its rulings as to these remaining questions."* This Court found in the Cypress case, supra, after the rule nisi had issued, and the respondent trial judge had filed his answer, and the cause was at issue on the full record, that:

"On examination of the questions, other than the one above written to, and which the respondent ruled need not be answered, leads us to the conclusion that they sought evidence relevant to the subject matter involved in the suit and

might reasonably be considered calculated to lead to the discovery of admissible evidence. * * * To the extent indicated the writ of mandamus will issue as prayed."

The case of Ex Parte Thackston, 275 Ala. 424, 155 So.2d 526, arose under and out of the pre-trial deposition statute. In that case this Court isssued, upon petition for mandamus, a rule nisi to Judge Walter B. Jones, Judge of the Circuit Court of Montgomery County, Alabama, directing him to vacate an order he had made granting a motion to compel an attorney to furnish plaintiff, petitioner, certain statements of witnesses, or show cause why it should not be vacated. Respondent Judge Jones demurred to and answered the rule nisi. There was no contention or averment of an abuse of discretion by Judge Jones. This Court quoted from Ex Parte *Weissinger*, supra:

"The test, as to whether mandamus will be issued, now seems to depend on whether the remedy by appeal is adequate to prevent undue injury rather than the availability merely of remedy by appeal. Ex parte Watters, 180 Ala. 523, 61 So. 904."

This Court went on to hold that the order complained of was not a final judgment and an appeal will not lie from it, concluding:

"We are clear to the conclusion that the learned trial judge was in error, and the writ prayed for will issue, commanding him to vacate and set aside his order of January 18, 1962. Writ of mandamus awarded."

Thus it is apparent and obvious that, in cases involving the pre-trial discovery statute, the rule as to the issuance of the writ is the same as in other cases where mandamus is sought—that is to say, that, while an abuse of discretion on the part of the respondent trial judge may be the basis for issuance of the writ, it is not a condition

precedent to the issuance of the writ; and, further, that, where error is shown in the ruling of the respondent trial judge upon questions propounded in pre-trial discovery depositions, same not being otherwise reviewable by appeal or other revisable remedy, and working injury to the party complaining, mandamus will be awarded irrespective of whether an abuse of discretion appears. The case at bar is just such a case.

It is this writer's opinion that, under all the relevant Alabama authorities, finding of an abuse of discretion by the trial court is not in Alabama a prerequisite to the award of the rule, and that the lack of such an abuse of discretion in the pending case should not, and does not, preclude the issuance of the rule nisi in this case. I would add that, if this were not the rule in Alabama, and if an abuse of discretion were a prerequisite to a review of the Supreme Court in pre-trial discovery cases, this requirement would in effect nullify and eliminate all right of review in such cases, for a finding of an abuse of discretion on the part of our trial courts is seldom encountered. In not one case, within this writer's knowledge, involving a review of rulings by the trial court in pre-trial discovery depositions, as in this case, has an abuse of discretion been shown to exist.

It has long been recognized in Alabama that, if the application for the writ shows a prima facie right, the rule nisi should issue, without more. Board of Education of Jefferson County v. State, 222 Ala. 70, 131 So. 239; Bryce v. Burke, 172 Ala. 219, 55 So. 635; Edge v. Bonner, 257 Ala. 385, 59 So.2d 683. So that we come now to the question: "Do the petitions, both of which are properly verified, establish a prima facie right to the issuance of the rule?" The order of the respondent here is not the subject of review or revision by appeal, and yet is, at least in part, erroneous, injurious to the parties complaining, and no other legal remedy is available to correct the error and prevent the injury. Thus the test as prescribed in Ex Parte *Tower Manufacturing Co.*, supra, is fully met. A prima facie right to the issuance of the rule, as prayed by each of the petitions, is clear and obvious; and, the rule nisi should issue in each case.

Pretermitting a discussion of the several questions propounded to the plaintiff and the witness Reese, and the rulings of the trial court on each of them, an examination of the ruling of the court on questions 1 and 2, and then on question 8, clearly demonstrates error on one or the other. Questions 1 and 2 called for an answer by the plaintiff as to the basis of his cause of action against Alabama Power Company. Question 8 called for the same information in slightly different words. The trial court directed plaintiff to answer question 8, and relieved him of the duty to answer questions 1 and 2. Obviously the ruling on 8, or the ruling on 1 and 2, was erroneous, for they were inconsistent. The respondent is entitled to give his reasons and explanation for such apparent inconsistency in his rulings, and opportunity to do so would be afforded him by issuance of the rule nisi, as prayed in both petitions.

The majority, after concluding that the rule nisi should not issue, nevertheless proceeded to pass upon the correctness of the trial court's ruling upon the several questions propounded to the plaintiff and the witness Reese; though they had before them only the verified petitions with the exhibits thereto and the order of the trial court. Their conclusions as to error vel non of the trial court were reached through speculation and conjecture:

"The trial court *apparently* interpreted questions 4, 5, 8, 9 and 10 as inquiring for relevant facts, rather than contentions and opinions." (emphasis added)

And again:

"*If* questions 6 and 7 are intended to ask if the plaintiff himself paid the Alabama Power Company for the damage done to the pole, the answer could reason-

ably lead to relevant evidence." (emphasis added)

This speculation and conjecture could have so readily been eliminated, and the reasons for the trial court's ruling on each of the questions made certain, by giving the trial court the occasion or opportunity to file an answer, explaining his reasons for so ruling in each case.

I am of the opinion that the ends of justice would be served, not only as to the parties to the original action but, also, as to the respondent trial judge, if the rule nisi were issued and he files his answer, and this Court is given the opportunity to pass upon the propriety or correctness of the trial court's ruling upon each of the questions, having before the Court the full knowledge and information that the entire record, including respondent's answer, would disclose, rather than to undertake to pass upon such rulings with only the verified petition and the order of the respondent constituting the record before the Court. I believe that in such event this Court could better, and with much higher degree of accuracy, determine whether the questions propounded to the witness Reese and the plaintiff could be reasonably calculated to lead to the discovery of admissible evidence; and, that the conjecture and speculation with which the majority's conclusions are infected would, in such event, be completely eradicated.

I respectfully dissent from the opinion of the majority.

THORNTON, Justice (dissenting).

The question for decision is whether this Court should issue to Hon. Richard P. Emmet a rule to show cause why he should not reverse his rulings on questions presented to him which had been asked on pre-trial statutory discovery. This question is presented by both plaintiffs and defendants filing petitions for such rule. Neither party questioned either the legal or factual suf-

ficiency of the petition filed by the other party.

From the petitions it appears that suits were filed for the wrongful death of plaintiff's wife and for personal injuries suffered by plaintiff in a collision at night with an unlighted utility pole situated on the median strip in a street in the City of Montgomery by a car driven by plaintiff. The defendants sought to take the depositions of plaintiff and witness Warren Reese on oral examination under Act No. 375 of the 1955 Legislature. During the course of the proceedings the following, among other questions, were asked the plaintiff:

1. "Q. Well, Judge, there are two suits filed against the Alabama Power Company totaling an addendum of $200,000.00. On what basis are you asking the Alabama Power Company to pay you individually and as Executor that sum of money?"

2. "Q. Now, what do you say the Alabama Power Company did was wrong?"

3. "Q. Judge, in what way did the City of Montgomery injure you?"

4. "Q. Have you ever heard of anybody running an automobile into the power pole which your automobile went into?"

5. "Q. Have your lawyers, to your knowledge, ever heard of anyone running an automobile into the power pole that your automobile went into on April 15th, 1966?"

6. "Q. All right, sir. Now Judge, payment was made by you, or on your behalf to the Alabama Power Company for the damage done to that pole by your automobile, was it not?"

7. "Q. And the occasion of the damage was on April 15th, 1966, the

same events that form the basis of these two lawsuits?"

8. "Q. Again, so the record will be clear, from your own knowledge, Judge, and as the Justice of the Supreme Court of Alabama and with the legal background that you have described in your testimony, can you testify today as to any acts or omissions on the part of the Alabama Power Company which would make the Alabama Power Company liable to you in the two capacities in which you have claimed damages in these two lawsuits?"

9. "Q. And am I correct that you are relying entirely on the advice of your lawyers, Mr. Hill and Mr. Harris in bringing these two lawsuits against the Alabama Power Company?"

10. "Q. And am I correct that this entire lawsuit and the allegations in the complaint are based not on any personal knowledge of yours, but on investigations which Mr. Hill and Mr. Harris have made and in which they have reported to you; is that correct?"

Witness Reese was asked the following, among other:

1. "Q. Let me put it this way: It would not be something unusual to see Judge Simpson drinking at a party where liquor was served, would it, Mr. Reese?"

2. "Q. Have you seen him have a drink at anytime since the accident?"

On advice of counsel, the questions set out above were not answered. The failure to answer the questions was brought before Judge Emmet and he ordered plaintiff to answer questions 4, 5, 8, 9 and 10 but denied the request as to the other questions and ruled that witness Reese need not answer the questions noted above.

Thereupon both parties filed petitions praying the issuance of the rule. Both petitions allege that these rulings by Judge Emmet were erroneous, working injury to the party complaining, and there was no other legal remedy adequate for the correction of the error and prevention of injury. The plaintiffs complained at being required by the Judge to answer any of these questions. The defendants complained at the Judge not requiring all of the questions answered.

The right to a review in this Court in this case was set out in Ex parte Tower Manufacturing Co., 103 Ala. 415, 418, 419, 15 So. 836, 837 by Brickell, C. J.:

"If an order or judgment or decree is made or rendered, which is not the subject of revision by appeal or other revisory remedy, and yet is erroneous, working injury to the party complaining, and there being no other legal remedy, adequate to the correction of the error and the prevention of the injury, mandamus will be awarded."

This rule has been repeatedly reaffirmed. See First Nat. Bank of Anniston v. Cheney, 120 Ala. 117, 23 So. 733; Ex parte Merritt, 142 Ala. 115, 38 So. 183; Ex parte Watters, 180 Ala. 523, 61 So. 904; Ex parte Hartwell, 238 Ala. 62, 188 So. 891. See also Ex parte Laurie, 277 Ala. 137, 167 So. 2d 705, and cases cited therein.

In Mallory v. Matlock, 7 Ala. 757, it was held that the action of the trial court in refusing to require answers to interrogatories was not reviewable by writ of error. It was suggested that mandamus was the proper remedy. In Ex parte Elston, 25 Ala. 72, however, it was held that mandamus was not the appropriate remedy to review an order of the trial court suppressing a deposition, since this order was reviewable on appeal. In Ex parte State ex rel. St. Peters M. Baptist Church, 212 Ala. 365, 102 So. 793, it was held that mandamus could be used to review the action of the trial court in refusing to require answers to interrogatories in garnishment proceed-

ings. In Ex parte State ex rel. Tuck, 217 Ala. 143, 115 So. 155, it was held:

> "The facts stated in the petition show that a legal right—the right to require his adversary in the pending suit to answer the petitioner's interrogatories, filed under section 7764 of the Code—has been denied to him for the redress of which the writ of mandamus is the appropriate remedy."

Since that case, there has been no question in this Court but that mandamus is the appropriate remedy to review rulings by the trial court when it has refused to require answers to statutory interrogatories. See Ex parte Nolen, 223 Ala. 213, 135 So. 337; Ex parte Altman, 233 Ala. 475, 172 So. 641; Ex parte Rowell, 248 Ala. 80, 26 So.2d 554; Ex parte Driver, 255 Ala. 118, 50 So.2d 413. See also Ex parte Bahakel, 246 Ala. 527, 21 So.2d 619; Ex parte Wood, 253 Ala. 375, 44 So.2d 560.

On the other hand, when the trial court has ordered the interrogatories to be answered, mandamus has been held to be the appropriate remedy to review such an order. Ex parte Pollard, 233 Ala. 335, 171 So. 628; Ex parte Benson, 243 Ala. 435, 10 So.2d 482.

A distinction between these cases was noted in Ex parte Little, 205 Ala. 517, 88 So. 645, where the trial court ordered interrogatories to be answered. In denying mandamus as appropriate to review this order, it was said:

> "Cases should not be tried by piecemeal, and separate and distinct rulings upon the evidence brought to this court pending the progress of the trial * * *."

This distinction between allowing mandamus when interrogatories were not ordered to be answered, and not allowing it when interrogatories were ordered answered, was followed in Ex parte Farrell, 234 Ala. 498, 175 So. 277. See also Ex parte *Benson,* supra.

This distinction has not been maintained, however, and the practice now is firmly established that this Court will review by mandamus all questions and answers and their sufficiency, ruled on by the trial court. Ex parte *Nolan,* supra; Ex parte *Altman,* supra; Ex parte *Bahakel,* supra; Ex parte *Rowell,* supra; Ex parte *Driver,* supra; Ex parte Markle, 264 Ala. 376, 88 So.2d 363.

When Act No. 375 came before this Court in Ex parte Rice, 265 Ala. 454, 92 So.2d 16, the trial court had refused to stay the taking of pre-trial oral depositions. Mandamus was allowed to review this ruling, since it did not involve "piecemeal review" and an appeal would not be available or adequate. In Ex parte Thackston, 275 Ala. 424, 155 So.2d 526, mandamus was granted to review an order requiring a witness to produce written documents on the taking of an oral deposition. In Smith v. Flynn, 275 Ala. 392, 401, 155 So.2d 497, 505 concerning the review on appeal of an order staying the taking of an oral deposition, it was said:

> "Mandamus is the appropriate remedy to review a circuit judge's rulings granting or refusing a motion to require answers or fuller answers to interrogatories propounded by one party to another * * *."

In Ex parte Cypress, 275 Ala. 563, 156 So. 2d 916, various questions and answers under Act No. 375 were reviewed on mandamus.

Since both parties have invoked the proper remedy, how is this review accomplished?

The judicial history of the practice for mandamus was set out by Walker, C. J., in Ex parte Garland, 42 Ala. 559. He concluded with observations which are pertinent in this case.

> "It would probably be better to adopt some rules of practice governing the proceeding by this court by mandamus but we will not attempt to do so at this time.

"We conclude that an opinion upon questions of law adverse to parties not before the court and not notified should not be expressed, unless some extraordinary emergency should arise, in which delay would be highly injurious. If the court can perceive plainly, that the relator is not entitled to the mandamus upon his own showing, it is proper to proceed to judgment against him. I am not able, for myself, to attain the satisfactory conclusion against the relator's right to the relief he seeks which would justify me in refusing the rule nisi, and I would prefer, without making any authoritative announcement of the law of the case to grant the rule nisi."

The Legislature sought to supply the rules of practice for these proceedings by enacting what are now sections 1072–1080 of Title 7 of the Code. They call for a petition verified by affidavit, and responsive pleadings, and the return or answer was not to be conclusive as at common law. See Speed v. Cocke, 57 Ala. 209, 214, 215, for the effect of these rules of practice.

Though Walker, C. J., was the dissenting Judge in Ex parte *Garland,* supra, his view that the rule nisi should be granted unless the petition was wholly without merit has prevailed. Hence, in Bryce v. Burke, 172 Ala. 219, 228, 55 So. 635, 637, it was held:

"In our practice a rule to show cause is treated as a substantial equivalent for the more formal alternative writ, and where the petition shows a prima facie right it has been held proper to issue a rule nisi."

This holding that the showing of a prima facie right to the writ in the petition makes the issuance of the rule proper, has been followed without exception. Board of Education of Jefferson County v. State, 222 Ala. 70, 74, 131 So. 239; Edge v. Bonner, 257 Ala. 385, 386, 59 So.2d 683.

Hence, the question here is whether or not a prima facie right to the rule has been shown in the petitions. They allege in the words in Ex parte Tower Manufacturing Co., that Judge Emmet's order is not the subject of revision by appeal and yet is erroneous, working injury to the party complaining and there is no other legal remedy adequate to correct the error and prevent the injury. What more is necessary to obtain the issuance of the writ?

The majority says "that the issuance of the writ is limited to those [cases] where an abuse of discretion is shown." There is not a shred of authority in this State to sustain this position. The citation of Ex parte Cypress, 275 Ala. 563, 156 So.2d 916 is totally inapt. In that case the rule nisi was issued. The question there was on the merits of the ruling by the trial judge in sustaining objections to a question to a witness who was asked "Do you know what that letter is?" To find in that case authority for a limitation on the issuance of the rule in these discovery cases is to find somthing which does not exist.

Nor is the citation of 23 Am.Jur.2d 665, Depositions and Discovery, § 270 appropriate for limiting the issuance of the writ to cases of abuse of judicial discretion. That section is expressly directed to the review on the merits after the matter has been presented to the appellate court.

The discussion of federal cases and texts is also besides the point for the decision here. The doctrine of "piecemeal review" has all been thrashed out in cases in this Court dealing with discovery generally, and to return to that argument at this time is to mistake the judicial function. It is not for us to decide matters of policy in deciding cases. That is for the legislature, except in our promulgating rules of procedure for future guidance in later cases. But we are not so engaged here. Our duty is to decide what the law is for the issuance of a rule nisi in discovery cases. The law is perfectly plain in this regard, and it is not that the issuance of the writ is limited to cases of abuse of judicial discretion. ·

In the second place, there is no "judicial discretion" in this case at this time. Judge Emmet had no discretion in what he did. He had to rule on the objections submitted to him. He may have ruled erroneously, but whatever he did, he had to do it. Hence, to limit the issuance of the writ in these cases to those showing "an abuse of discretion" is to turn back the law in this State on the review of rulings on discovery to a time before Ex parte *Garland,* for though the writ was not issued in that case it was not for a failure to show an abuse of judicial discretion. (The ruling there was that on the merits there was no error in the trial judge's rulings.)

Suppose Judge Emmet had ordered witness Reese to answer the question "Have you seen him [Plaintiff] have a drink at any time since the accident?" At first blush this would seem to be beyond the realm of any legitimate discovery. Hence, such an order to answer this question would seem to be erroneous. But can it be said that this ruling abused any discretion the Judge had? No Judge, trial, or otherwise, has a discretion to commit error. He has a duty to rule rightly as the law gives him the light. Hence, there can be no justification for the creation of this artificial limitation of review on discovery.

Furthermore, the creation of this new policy for the issuance of the alternative writ of mandamus is to pervert the concept of that writ. Mandamus has never been used to review discretion. Hence, to say in this case that mandamus is available to review an abuse of discretion is to upset law which has been settled otherwise since this Court began.

It is apparent that the majority in this case has confused abuse of judicial discretion,—a slippery concept at best—with judicial error. Of course, if the petition on its face shows no conceivable judicial error by the trial judge, the issuance of the writ need not be granted. But as Chief Justice Walker said in Ex parte *Garland,* it is preferable to issue the writ before

making any authoritative announcement of the law of the case. Are both of the petitions in this case so devoid of merit as to justify dismissing them without a hearing on the merits?

The trial judge ordered plaintiff to answer interrogatories 8, 9 and 10 as to the acts of defendants constituting the basis of plaintiff's claims, and the results and conclusions of plaintiff's attorneys. At the same time, the trial judge did not require answers to interrogatories 1, 2 and 3 which seem to cover at least part of the same ground. Was the Judge so plainly right in both of these rulings as to make the efforts of both attorneys to review these rulings practically frivolous? Unless we are prepared to answer this in the affirmative, we should ask the one and the only one who knows why these two rulings are not inconsistent, to tell us in response to the rule how he reconciles these rulings.

Incidentally, while passing on the merits of the rulings on these interrogatories, wrongly in my judgment, there is much discussion by the majority of the "work product" rule not adopting the "silver platter" doctrine. And, of course, this is sound. But why doesn't the requirement for the answer of interrogatories 9 and 10 sanction the "silver platter" doctrine?

Even the majority concede that interrogatories 6 and 7, concerning payment for the pole, might lead to relevant evidence, the only test givn by the statute for the scope of examination by this type discovery.

Notwithstanding this prima facie showing of judicial error in these rulings, the majority refuses to review these rulings because "it is not made to appear that the trial judge abused his discretion." Certainly the majority is not requiring magic words in the petitions, such as reciting "abuse of discretion", to permit review. They must be saying that no judicial error is shown. But to require a plaintiff to answer what his attorneys advised about the nature and validity of his claim in one

interrogatory, and then refuse to require it in another interrogatory, is anomalous if not downright erroneous in one instance or the other.

After refusing to issue the writ in this case, the majority opinion then embarks on the task of reviewing the actions of the trial judge based solely on the questions asked, and finding no substantial error, observes that such conclusions can be properly made "without the aid of further pleadings or record", or any return from the Judge whose actions are being adjudicated. This practice cannot be permitted to pass without comment.

In the first place, we are passing judgment on the actions of a trial judge. Before doing that we should have before us what he had before him, namely, the record. Only recently, we commented on our inability and unwillingness to review actions of a trial judge when we did not have a full record before us. Smith v. State, 280 Ala. 241, 192 So.2d 443.

In the second place, as said in Ex parte Garland, 42 Ala. 559, 562:

"A conclusive adjudication against persons adversely interested is not made until the rule nisi is returned, and the persons adversely interested are notified and have an opportunity to be heard."

It is true that the trial judge is not "adversely interested" in this proceeding, and his actions are being affirmed in this case, but his actions are being reviewed, and he is given no opportunity to explain his actions. If we may review his actions to affirm without hearing from him, why not review to reverse? Certainly, in the past we have found the return by the trial judge to be of great help in understanding why the Judge ruled as he did. Thus, in Ex parte Bahakel, 246 Ala. 527, 528, 21 So. 2d 619, we said:

"The trial judge has filed a complete answer, giving his reasons for denying the motion, with citation of applicable authorities, all of which has proven helpful in our study of the cause."

To review even to affirm should not be made without affording the Judge the opportunity to explain. The alternatives should be between reviewing and not reviewing by issuing or withholding the writ; not between reviewing to affirm without a return and not reviewing without a return if to reverse.

Then, the return to the rule nisi is the only opportunity the trial judge has to explain actions which are not of record. Ex parte Green, 221 Ala. 298, 129 So. 72. But all of this is foregone in this case. Of course, the issuance of the rule nisi does not mean that the peremptory writ must be issued. Ex parte Carroll, 272 Ala. 353, 131 So. 676. It merely means that a prima facie showing of error has been made. Both parties believe that a prima facie showing has been made. They so allege in their petitions, and neither contradicts the allegation of judicial error by the other. But the majority has ruled that both parties are wrong and that the action of the trial court was not erroneous, without even seeing the record or hearing how the trial judge explains his actions in this case. Such action is not only injudicious; it is unjudicial.

Therefore, I would grant the rule nisi in this case. But if it is not issued, I am not prepared to pass judgment on what the trial judge did in this case, and I do not believe that the majority should.